[No. E019570. Fourth Dist., Div. Two. Apr. 21, 1997.]

COUNTY OF RIVERSIDE et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent:
JANET HILL et al., Real Parties in Interest.

444

---

## COUNSEL

Stradling, Yocca, Carlson & Rauth, Gary A. Pemberton and Paul L. Gale for Petitioners.

No appearance for Respondent:

C. Robert Ferguson for Real Parties in Interest.

**OPINION**

**WARD, J.**—The County of Riverside (Riverside)[1] seeks review of the trial court's order refusing to quash service of process upon it in an action to invalidate a redevelopment plan and to dismiss the action. We hold that the manner of service was fatally defective, and will grant the requested relief.

## FACTS OF THE CASE

The underlying action is brought under the authority of Code of Civil Procedure section 863[2] and is what is sometimes called a "reverse validation action"; real parties seek to invalidate official actions involving a redevelopment project. The statute provides that the form and manner of service of summons in such an action is that prescribed by section 861.1, which in the first instance is specifically directed to direct validation actions filed *by* a public agency.

In a direct validation action, of course, the only requirement is for notice to the public. In an action under section 863, however, notice is to be provided both to the public entity and to members of the public—the former by personal service, the latter through publication, in the same fashion as in a direct validation action.

The summons must be directed to " 'all persons interested in the matter of [specifying the matter],' " as well as the public agency. (§§ 861.1, 863.) It "shall contain a notice to all persons interested in the matter to appear and answer the complaint not later than the date specified in the summons, which date shall be 10 or more days after the completion of publication of the summons. Except as otherwise specified in this section such summons shall be in the form prescribed in Section 412.20." (§ 861.1.)

In the usual civil action, the summons directs the defendant that he or she may file an answer within 30 days of service. (§ 412.20, subd. (a)(3).) The primary difference in a validation action, or a reverse validation action, is that the plaintiff may specify a shorter time for response, as long as at least 10 days are given, and the required summons is designed to inform prospective parties of this crucial fact.

Plaintiffs, however, did not employ a modified summons. Instead, on August 30, 1996, they caused to be published for the first time a copy of the

---

[1]The Riverside County Redevelopment Agency is also a named plaintiff. We will refer to a singular plaintiff for convenience; we expect that there is no significant difference between the two and they raised joint objections.

[2]All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

usual civil summons.[3] Readers were informed that they had *30* days in which to respond "after this summons is served on you." No precise date was specified. The published notice included the figures "8/30, 9/6, 13, 20" at the end, indicating the dates on which the notice was to be published.[4]

On August 14, 1996, plaintiffs accomplished personal service on Riverside. Again, a general civil service form was used, informing Riverside that it had 30 days in which to respond.

Riverside moved to quash service (§ 418.10) on the grounds that the published summons was fatally defective in that it did not specify a date for answering and appearing.[5] It also argued that the summons personally served on it was defective because it was not allowed the same time to answer as was granted to "all persons" notified by the publication. Plaintiffs responded that the service was at least in substantial compliance with the statutes.

The trial court found that it was not significant that the publication did not specify a date, and that the service was valid. This petition followed.

DISCUSSION

A.

*The Service on Riverside*

◼ Riverside's primary objection[6] is that it was not given the same time in which to respond as were those notified by the published summons. Having been served on August 14, Riverside's response was due no later than September 13, 1996. However, as we will discuss in part B, *post*, the published notice in effect gave parties notified through the publication until approximately October 20 in which to answer and appear.

Riverside cites no authority for the proposition that a *single* response date must apply to all parties, however served. It is true that section 863 does

---

[3]It was, however, correctly directed both to petitioners and "all persons interested."

[4]Publication in a validation or reverse validation action is made under Government Code section 6063 (see Code Civ. Proc., § 861) which only requires three publications. Publication of summons in a usual civil action is accomplished pursuant to Government Code section 6064, which requires four publications. The publication here followed the latter section. However, this extra publication did not invalidate the publication overall. (*Sacramento M. U. Dist.* v. *All Parties, etc.* (1936) 6 Cal.2d 197, 203-204 [57 P.2d 506].)

[5]Riverside is entitled to complain about the published summons, because a (reverse) validation action is quasi in rem and jurisdiction over the matter depends on proper service. (See *Arnold* v. *Newhall County Water Dist.* (1970) 11 Cal.App.3d 794, 801 [96 Cal.Rptr. 894].)

[6]It appears to complain generally of the format of the summons; however, we do not find this significant other than with respect to the response date.

provide that "the summons [served on the public agency] shall be in the form prescribed in Section 861.1." However, this need not necessarily be construed as requiring the served notice to contain the same date.

The problem is that section 863 compels a correspondence between *published* summons and *personally served* summons in a way that makes it difficult to accomplish both services in literal compliance with the statute. Section 863 prescribes the manner for *personally serving* the public agency involved, but does so by referring back to a statute (§ 861.1) which is concerned solely with *published* notice. Under Riverside's construction, a plaintiff in an action under section 863 would be required to orchestrate the two types of service with a nicety which might be impossible. A plaintiff might publish notice first, specifying a response date, for example, of January 31. According to Riverside, the summons served on it would also have to give the response date of January 31. But what if unexpected obstacles to service arose, so that service could not be completed until after January 21?[7]

When a summons is published as required by section 863, it is possible to specify a particular date because the dates of publication, and thus the date of "service" (see *post*), are known in advance. However, when service must be personally made, it is not practical for the summons to include a specific date because it is never possible to be absolutely sure that service will be accomplished on the intended date. A plaintiff would either risk invalidating service if the defendant could not be served until a date which left him *too little* time to respond, or would be required to extend more time than otherwise necessary in order to ensure that the statutorily required period was provided.

We think that the Legislature, by appearing to require that the summons served on the public entity contain a specific date, has inadvertently created a potential pitfall for plaintiffs attempting to comply with both service requirements. However, even if we accept, arguendo, that a specific date is required, we are not obliged to accept that the date must be the same as that contained in the published summons.

It is enough that the public entity be informed of a date for response which satisfies the statutory requirement of at least 10 days' notice. Although it is true that a same-date rule would give the public entity *additional* time in

---

[7]We recognize that a public entity is generally easy to serve, but the best planning can be overset by such matters as "furlough days."

which to respond if it were personally served on the same date that publication commenced,[8] this is not a result which we feel compelled to bring about. The additional amount of time would vary depending on when the public entity was served, which would lead to capricious results; more significantly, if the Legislature wished to see to it that public entities usually had more than the minimum of 10 days in which to respond, we think it could have found a clearer and less convoluted way of providing for it.

Thus, we conclude that the failure to specify the same response date was not fatal. However, this leads us to what we believe to be the more difficult question—is the precise specification of a response date critical? We turn first to the details surrounding the published summons.

## B.

### *The Published Summons*

At least Riverside, when served, could reasonably have figured out exactly how long it had in which to respond: 30 days from the date it received the summons. Anyone relying on the published summons was not so fortunate.

Calculating the time in which an answer must be filed from the language of a published summons in the form prescribed by section 412.20 is not easy. The published summons—which is, of course, identical to the form which would be personally served—simply requires response within 30 days from the date "this summons is served on you." How is the reader and defendant to determine this date?

Section 415.50, governing general civil service by publication, provides that "Service of a summons in this manner is deemed complete as provided in Section 6064 of the Government Code." Resort to *that* statute provides the information that, for a four-week publication, "the period of notice commences with the first day of publication and terminates at the end of the twenty-eighth day. . . ." However, reverse validation actions are governed by Government Code section 6063, not 6064—thus, anyone seeking elucidation from section 415.50 would immediately go astray. Section 6063, as we have noted, requires only three publications, and provides that the "period of notice" terminates at the end of the *twenty-first* day.

---

[8]Because the publication's response date could not be less than 10 days from the date of completion of publication, which (see *post*) is 21 days from the start of publication. A reader who sees an early publication is, of course, also able to take advantage of additional time in which to respond.

Thus, the reader of the notice published here must have begun by realizing that section 415.50, and its reference to Government Code section 6064, were irrelevant to a reverse validation action. In so concluding, the reader must have not been misled by the indication that the notice was being published four times, rather than three, and recognized that the fourth publication did *not* mean that section 6064 applied, but rather that plaintiffs had made a mistake.[9] Next, the reader must have understood that the "termination" of the "period of notice" mentioned in section 6063 was the equivalent of "service."[10] Third, if the reader looked at section 861.1, he or she must have also determined that the "termination" of the "period of notice" (Gov. Code, § 6063) and "completion of publication" (§ 861.1) were two ways of saying the same thing.

Having figured all this out, the reader would have known that a response was due on or before October 20.[11]

It must be admitted that it is somewhat unreasonable to expect the lay reader to come up with the correct date even if the confusion between Government Code sections 6063 and 6064 is avoided. Nevertheless, this is the scheme which has been provided by the Legislature with respect to service by publication in general civil actions. The issue here is whether a potential defendant, or respondent, in a reverse validation action can be compelled to go through the complex and uncertain analysis we have described.

Section 861.1 provides that the summons in a (reverse) validation action shall require response by the date "specified" in the summons. Plaintiffs argue that the date *was* specified, albeit by reference to the various statutory provisions. Riverside, on the other hand, argues that "specified" means the giving of a concrete date. We agree.

---

[9]The reader must also not have been misled by the four publications into thinking that he or she had thirty days after the completion of the *fourth* publication rather than the third. Or did he or she? For the purposes of the computations in our discussion, we conclude that the 30 days began to run after the completion of the last *required* publication. However, if it were important, a good argument could be made that the inclusion of a fourth publication deferred the commencement of the response period. This was the result in *Sacramento M.U. Dist.* v. *All Parties, etc., supra,* 6 Cal.2d 197, although that case was clearer because the summons notified parties that a response was due within 10 days "after the full publication of such summons."

[10]This, in and of itself, is by no means clear, but we think it is the only reasonable application of the provisions defining the "period of notice." If "service" is not deemed to have been made when the period of notice is over, there is no reason to have defined the "period of notice" at all.

[11]Service was begun on August 30. It was complete at the end of the 21st day, or September 20. Thirty days added to that is October 20. See, however, our comments in footnote 9.

■ It is often stated that the rules governing service of process are to be liberally construed, and that "substantial compliance" with the statutory mandates is sufficient to confer jurisdiction. (E.g., *Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180]; *Dill* v. *Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1436-1437 [29 Cal.Rptr.2d 746].) However, the traditional rule is that the requirements for service of summons by publication must be *strictly* complied with. (*Olvera* v. *Olvera* (1991) 232 Cal.App.3d 32, 41 [283 Cal.Rptr. 271]; *Eagle Electric Mfg. Co.* v. *Keener* (1966) 247 Cal.App.2d 246 [55 Cal.Rptr. 444].) Although in *Pasadena Medi-Center* the Supreme Court cited various commentators and State Bar reports whose recommendations of "liberal construction" preceded the reworking of the service statutes in 1970, subsequent cases have recognized that there remain situations in which "substantial compliance" is simply inadequate. Thus, in *Evartt* v. *Superior Court* (1979) 89 Cal.App.3d 795 [152 Cal.Rptr. 836], a case involving "reasonable diligence" to effect personal service before resorting to substituted service, the court distinguished *Pasadena Medi-Center* because the defect in the latter case "is not of the same jurisdictional importance as the element of reasonable diligence." (89 Cal.App.3d at p. 801.) Similarly, this court applied the "strict compliance" standard to a case involving service by publication in *Olvera* v. *Olvera, supra,* 232 Cal.App.3d 32.

If there is any situation in which strict compliance can reasonably be required, it is that of service by publication. It is true, however, that the cases are not consistent in their description of the appropriate standard even in this context. (See cases collected and cited in *Arnold* v. *Newhall County Water Dist., supra,* 11 Cal.App.3d at pp. 800-801.) However, we need not attempt to make a definitive resolution in this case. ■ In the unique circumstances present here we find that plaintiffs failed to comply even *substantially* with the statute.

In the usual case, service by publication is done as a method of last resort when the defendant cannot be found even after the exercise of reasonable diligence. We think it safe to say that there is really little expectation that a defendant so served will in fact acquire actual notice from the publication. In a validation or reverse validation action, by contrast, published notice to members of the public is the *primary* means of notice. Such actions involve matters of general public interest, and there is at least some reasonable expectation that potentially concerned parties will observe the notice and consider whether or not to take action on one side or the other. While the Legislature may have been content to leave the typical civil defendant largely in the dark as to the time by which he is required to respond, it is reasonable to assume that the Legislature was more concerned to provide clear information in a (reverse) validation action.

This assumption is reinforced by the history of section 861.1. As originally enacted in 1963, that section simply provided that the published summons should require an appearance and answer "within 10 days after the completion of publication of said summons and shall specify the date of the last day of publication." In 1965, it was amended (Stats. 1965, ch. 894, p. 2498) to remove even this rather minimal obligation on the reader to compute the actual response date, so that it now provides that an appearance must be made "not later than the date specified in the summons." Comparing the two versions, it is apparent that the intent of the amendments was to ensure that the response date was set out with precision.

This being so, we are unable to say that a published notice that forces the reader who wishes to know when to respond to find and apply a number of legal provisions and principles complies even substantially with the purpose of the statute.

Dismissal on these facts may seem harsh. However, as the court pointed out in *Community Redevelopment Agency* v. *Superior Court* (1967) 248 Cal.App.2d 164, 174-175 [56 Cal.Rptr. 201], reaching the same result ,"[t]he procedure to be followed with respect to the form and publication of summons in such a case as this is not complex. . . . the law was in all the books and readily available to plaintiffs' attorney."[12]

The trial court erred in finding that the summons and, consequently, the service, satisfied the statutory requirements. Section 863 provides that if service is not completed "in accordance with Section 861" and the proof filed within 60 days of the commencement of the action, the action "shall be dismissed." Although there is a proviso involving good cause for the failure, as a matter of law no such good cause existed here. (See fn. 12, *ante*.) The trial court had no alternative but to dismiss, and petitioners are entitled to the relief sought.

Let a peremptory writ of mandate issue, directing respondent court to vacate its order denying petitioners' motion to quash service and dismiss the

---

[12]In *Community Redevelopment Agency*, the plaintiffs had originally omitted to publish any summons at all within the statutory period of 60 days; however they had obtained relief from the trial court upon a purported showing of "good cause" for the failure. (See § 863.) The Court of Appeal not only held that the service, as accomplished, was invalid, but that the confusion of plaintiffs' attorney did not constitute "good cause" in the first place. (Cf. *Arnold* v. *Newhall County Water Dist.*, *supra*, 11 Cal.App.3d 794, in which the specified date, coupled with the dates of actual publication, gave insufficient time in which to respond; the appellate court held that counsel should be afforded the opportunity to explain why he reasonably believed that the newspaper would publish the summons on dates early enough to leave an adequate statutory response time.)

action, and to enter a new order granting the motion. The alternative writ having served its purpose, it is hereby discharged.

McKinster, Acting P. J., and McDaniel, J.,* concurred.

The petition of real parties in interest for review by the Supreme Court was denied July 9, 1997. Werdegar, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chief Justice pursuant to article VI, section 6 of the California Constitution.