Filed 12/4/18

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION EIGHT

| | |
|---|---|
| DR. JAY W. CALVERT et al., | B282984 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC453888) |
| v. | |
| RIMA AL BINALI et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Edward B. Moreton, Jr., Judge. Reversed with instructions.

Law Offices of Pasquale P. Caiazza and Bernadette M. Stafford for Plaintiffs and Respondents.

Law Offices of Cyrus S. Naim and Cyrus S. Naim for Defendant and Appellant.

_____

## INTRODUCTION

Defendant Rima Al Binali appeals the trial court's denial of her motion to vacate the $1,940,506 default judgment entered against her in favor of plaintiffs Dr. Jay W. Calvert and Jay Calvert, M.D., a professional corporation. Al Binali asserts that plaintiffs' faulty service by publication rendered the judgment void on its face. We agree and reverse.

## FACTS AND PROCEDURAL BACKGROUND

Dr. Calvert is a plastic surgeon based in Southern California and Al Binali is his former patient. This lawsuit precipitated from a negative review allegedly posted online by one of Dr. Calvert's former patients, commenting about surgical procedures and care that the patient received.

### 1. Plaintiffs' Defamation Lawsuit

On January 27, 2011, plaintiffs filed a defamation lawsuit against Does 1-25, alleging that the doe defendants made false reports about plaintiffs "on the consumer information and advocacy website found at www.ripoffreport.com."

Plaintiffs then obtained an order permitting them to conduct discovery to determine the identity of the alleged offenders. Plaintiffs subpoenaed Xcentric Ventures, LLC, the owner of ripoffreport.com. Xcentric was unable to identify the author of the reports because the author provided a false name and address to Xcentric.

Plaintiffs nonetheless decided, based on the content of the postings and information provided by Xcentric, the author was Rima Al Binali. On February 8, 2012, Plaintiffs filed an amended complaint providing more detail for the allegations. On February 10, 2012, plaintiffs filed an amendment naming Al Binali as a defendant.

2

### 2. Plaintiffs' Attempted Personal Service in Laguna Beach, California

On January 24, 2012 (prior to naming Al Binali as a defendant), plaintiffs hired private investigator William Courtice to serve Al Binali with a deposition subpoena. Courtice conducted a public records real property ownership search in Orange, Riverside, San Diego, San Bernardino, Ventura, and Los Angeles Counties for Al Binali with no success. Courtice conducted a public records search for Al Binali's phone number and address. One of the search results linked Al Binali to a home within a gated Laguna Beach community. The post office box number found in Al Binali's patient file was registered to a man at that address, who shared Al Binali's last name. Courtice attempted service of the subpoena on that address on January 26, 2012 without success. The next day, Courtice again attempted service of the subpoena at the address and was greeted by a man at the door. He informed Courtice that Al Binali lives in Canada. Plaintiffs never investigated whether Al Binali lived in Canada. Courtice attested a security gate guard told him that he sees Al Binali there daily. On seven days in February and two days in March 2012, Courtice attempted to serve the complaint and summons on Al Binali at that address but had no success despite conducting stakeouts.

A registered process server also staked out the Laguna Beach residence on three days and attempted service at that address five times, but did not have success. The process server attested "It is my belief that with every service attempt. . . , the security gate guard would alert Albinali [sic] and/or her family that I was on my way." Based on Al Binali's declaration in support of her motion to vacate and attached exhibits

3

documenting her travel, it appears Al Binali (a citizen of Saudi Arabia) was a permanent resident of Canada visiting Saudi Arabia at this time, and was never in the United States during any of the times plaintiffs attempted service. The Laguna Beach residence was her brother's home.

In February and May 2012, Plaintiffs also twice mailed the summons and complaint by regular mail to the Laguna Beach address, but the envelope was returned with the word "unknown" written on it. Pursuant to the trial court's directive, plaintiffs sent the summons by first class mail to the post office box listed in Al Binali's patient file in May.[1] The summons was returned to plaintiffs with a hand-written notation on it stating "not here" and a "return to sender: attempted not known" postal stamp. Plaintiffs attempted service by mail at another post office box associated with the Al Binali last name, but the mail was never picked up and the man who held the box returned the key. Plaintiffs also attempted to send her a singing telegram on her birthday to serve her, but were unable to contact her by phone.

3.     **Service by Publication**

Following plaintiffs' failed attempts to serve Al Binali at the Laguna Beach residence, plaintiffs applied for an order to serve Al Binali by publication in May 2012. The trial court twice rejected the application, requiring plaintiffs to make additional efforts, which are summarized above, and correct documents they filed with the court. On July 11, 2012, the court granted plaintiffs' application and ordered publication of the summons in the Orange County Register.

---

[1]     The trial court directed plaintiffs to mail the summons to the post office box associated with Al Binali when it first rejected the application for publication of the summons.

4

When plaintiffs submitted the summons to the Orange County Register for publication, the Register published it in the Laguna News-Post, a regional newspaper produced by the Register. Plaintiffs published the summons in the Laguna News-Post on four dates in July and August 2012. The court subsequently rejected plaintiffs' request for entry of default judgment because the publication failed to include a statement of damages. Plaintiffs republished the summons in the Laguna News-Post on four dates in November 2012.

**4.      Entry of Judgment**

Plaintiffs then proceeded with their default prove-up. On January 31, 2014, the trial court entered default judgment for $1,940,506 in damages, which included $80,900 in legal fees and costs, against Al Binali in plaintiffs' favor.

**5.      Motion to Vacate**

In September 2014, plaintiffs applied to enforce the judgment in Canada, where Al Binali has resided since 2011. Al Binali discovered an application to enforce plaintiffs' judgment filed with a Canadian court in December 2015. In the spring of 2016, Al Binali hired counsel to defend her in the proceedings. She filed the motion to vacate or in the alternative set aside the default judgment, and motion to quash service of summons on February 6, 2017. Al Binali argued the judgment was void for a number of reasons, including improper service by publication. She argued that plaintiffs failed to publish the summons in the newspaper designated by the court, asserting that the Laguna Post (where the summons was published) had 100 times fewer copies in circulation than the Orange County Register (the periodical designated for publication by the court). She also argued that plaintiffs failed to exercise diligence in serving her.

5

Plaintiffs opposed the motion.  There was no hearing on the motion to vacate because defense counsel submitted on the tentative rulings and waived oral argument.

**6.      Denial of Motion to Vacate**

On May 1, 2017, the trial court denied the motion to vacate or set aside the judgment, stating that "[d]efendant has not demonstrated that the judgment is void on its face.  Defendant has also not satisfactorily demonstrated diligence in bringing the motion."  Al Binali timely appealed.

**DISCUSSION**

Al Binali argues the judgment is void on its face and must be vacated.  We agree.

**1.      Facially Void Judgments:  Applicable Principles**

"The court may . . . on motion of either party after notice to the other party, set aside any void judgment or order."  (Code Civ. Proc., § 473, subd. (d).)[2]  Generally, defendants have six months from entry of judgment to move to vacate.  (§ 473, subd. (b).)  But, "[i]f the judgment is void on its face, then the six months limit set by section 473 to make other motions to vacate a judgment does not apply."  (*National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 414.)  " 'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll.' "  (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 (*Dill*); *Trackman v. Kenney* (2010) 187 Cal.App.4th 175, 181 ["This does not hinge on evidence:  A void judgment's invalidity appears on the face of the record."].)  In cases where there is no answer filed by the defendant, the judgment roll includes:  "the summons, with the

---

[2]      All subsequent statutory references are to the Code of Civil Procedure.

6

affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment; . . . and in case the service so made is by publication, the affidavit for publication of summons, and the order directing the publication of summons." (§ 670; *Dill, supra,* at p. 1441 ["In a case in which the defendant does not answer the complaint, the judgment roll includes the proof of service."].)

"When a court lacks jurisdiction in a fundamental sense, such as lack of authority over the subject matter or the parties, an ensuing judgment is void. [Citation.] To establish personal jurisdiction, it is essential to comply with the statutory procedures for service of process. [Citation.] Accordingly, ' "a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void." ' " (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1330–1331.) When "the lack of jurisdiction appears on the face of the judgment roll, . . . 'the judgment is for all purposes a nullity—past, present and future.' " (*Id.* at p. 1331.) Void judgments are ineffective and unenforceable. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1226.) For that reason, an order incorrectly denying relief from a void judgment is also void, as it gives effect to the judgment. (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691.)

## 2. Standard of Review

Citing cases involving motions to vacate facially valid default judgments, plaintiffs assert that the standard of review is abuse of discretion. (See *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257; *In re Marriage of Connolly* (1979)

7

23 Cal.3d 590, 597–598.) These cases are inapt as they address discretionary decisions made by the trial court based on evidence outside the judgment roll.

As explained above, our decision is limited to review of the judgment roll. The issue of whether a judgment is void on its face is a question of law, which we review de novo. (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440 [de novo review to determine whether judgment void on its face for improper service]; *Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858.)

### 3. The Judgment is Void on its Face for Improper Service

Al Binali argues that the judgment is void on its face because plaintiffs published the summons in the wrong newspaper. We have reviewed the judgment roll, specifically the order directing the publication of summons and the actual summons, and agree. The trial court ordered plaintiffs to publish the summons "in The Orange County Register, a newspaper of general circulation published at Orange County, California." Plaintiffs, however, published notice in the Laguna News-Post. This error is fatal to their judgment.

"When jurisdiction is obtained by a prescribed form of constructive notice, the statutory conditions upon which service depends must be strictly construed; there must be strict compliance with the mode prescribed in the statute. Conformance with the statute is deemed jurisdictional and absence thereof deprives the court in the particular action of power to render a judgment." (*Eagle Electric Mfg. Co. v. Keener* (1966) 247 Cal.App.2d 246, 250–251.) "If there is any situation in which strict compliance can reasonably be required, it is that of

8

service by publication." (*County of Riverside v. Superior Court* (1997) 54 Cal.App.4th 443, 450.)

Section 415.50 states that the "court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served." (*Ibid.*) Publication in the newspaper named by the court is essential, as it ensures notice is given via the periodical that the trial court finds most likely to give the defendant notice. Plaintiffs' failure to comport with the court's publication requirements renders the judgment void on its face.[3]

### 4. Plaintiffs' Arguments are Unpersuasive

Plaintiffs assert that Al Binali did not act diligently in moving to vacate the default judgment. Yet, "a default that is void on the face of the record when entered is subject to challenge at any time irrespective of lack of diligence in seeking to set it aside within the six-month period of section 473." (*Plotitsa v. Superior Court (Kadri)* (1983) 140 Cal.App.3d 755, 761.)

Plaintiffs also argue they substantially complied with the service by publication statute and according to the 1903 California Supreme Court case, *Columbia Screw Co. v. Warner Lock Co.* (1903) 138 Cal. 445 (*Columbia*), substantial compliance

---

[3] Although we do not decide this case based on plaintiffs' failure to exercise due diligence to personally serve Al Binali, we observe that plaintiffs' efforts were questionable. Surprisingly, plaintiffs made no attempt to locate Al Binali in Canada despite being told in January 2012 that Al Binali lived in Canada (before they even named her as defendant). Yet, some nine months after entry of judgment, plaintiffs sought to enforce it in Canada, where Al Binali resides. (See *Carr v. Kamins* (2007) 151 Cal.App.4th 929, 936 [service by publication ineffective for the plaintiff's failure to exercise reasonable diligence].)

9

is sufficient.  (*Id.* at p. 446 ["The service of a summons by publication is in derogation of the common law, and in order to obtain such constructive service, the statute must be substantially complied with and its mandates observed."].)  *Columbia* solely addressed the sufficiency of the affidavit the plaintiff used to procure an order for publication of the summons on a foreign corporation.  (*Ibid.*)  The court's statement that "the statute must be substantially complied with and its mandates observed" refers to repealed section 412.  (*Ibid.*)  The case did not address compliance with section 415.50's requirements for service by publication, and subsequent cases, as we discuss, reject substantial compliance in this context.

Plaintiffs ignore the breadth of case law establishing that section 415.50 is strictly construed.  (See *County of Riverside v. Superior Court*, *supra*, 54 Cal.App.4th at p. 450 ["the traditional rule is that the requirements for service of summons by publication must be strictly complied with"]; *Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1034; *Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 41 (*Olvera*); *Eagle Electric Mfg. Co. v. Keener, supra,* 247 Cal.App.2d at p. 251.)  As we have held, " 'When jurisdiction is sought to be established by constructive service, the statutory conditions for such service must be strictly complied with or the judgment is subject to collateral attack.' [Citation.]" (*Carr v. Kamins, supra,* 151 Cal.App.4th at p. 936 [examining service by publication].)  That plaintiffs published the summons in the designated newspaper's subsidiary does not constitute compliance.  The summons was not published in the Orange County Register, as required by the trial court.  Plaintiffs' failure to comply with the

10

statutory requirements for publication are plain on the face of the judgment roll.

"Personal service remains the method of choice under the statutes and the constitution." (*Olvera, supra,* 232 Cal.App.3d at p. 41.)  Consistent with the notions of fair play and due process, substituted service by publication is "a last resort" when "reasonable diligence to locate a person in order to give him notice before resorting to the fictional notice afforded by publication" has been exercised.  (*Donel, Inc. v. Badalian* (1978) 87 Cal.App.3d 327, 332.)  "If there is any situation in which strict compliance can reasonably be required, it is that of service by publication."  (*County of Riverside v. Superior Court, supra,* 54 Cal.App.4th at p. 450; *Olvera,* at p. 41 ["When substituted or constructive service is attempted, strict compliance with the letter and spirit of the statutes is required."].)  "In order to obtain in personam jurisdiction by a form of constructive service, there must be strict compliance with the requisite statutory procedures."  (*Tandy Corp. v. Superior Court* (1981) 117 Cal.App.3d 911, 913.)  Plaintiffs were not compliant.

Plaintiffs also assert that the trial judge "ratified the means of publication when he approved entry of default and issued the subsequent judgment."  Plaintiffs cite no case law to support this theory and we have not found any.  "We are not bound to develop appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)  We find plaintiffs' ratification argument particularly unpersuasive, given that plaintiffs admitted at oral argument they did not point out to the court at the service and prove up hearings that the

11

publication was in the Laguna News-Post, rather than the Orange County Register. We cannot infer ratification of conduct that was never brought to the trial court's attention. Certainly plaintiffs could have asked the trial court for permission to publish in the Post-News. The court could have modified its previous order. But, what plaintiffs could not do is raise this ratification argument for the first time on appeal. Under these circumstances, we can only speculate ~~on~~ what the trial court might have done if plaintiffs had requested to publish in the unauthorized newspaper. (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [the Court of Appeal does not address "issues raised for the first time on appeal which were not litigated in the trial court"].)

Plaintiffs highlight the fact the publisher of the Orange County Register, not plaintiffs, was the one who chose to publish the summons in the Laguna News Post. The publisher's failure to print the summons in the authorized periodical did not relieve plaintiffs of their duty to comply with the court's order for service by publication. Tellingly, plaintiffs did not correct the error or demand compliance from the publisher when they printed the summons for a second time to include the statement of damages. A final point on service by publication in a newspaper not authorized by the court: A party may not with impunity simply ignore a court order even for professed "good" reasons. The logic of the Court of Appeal in *Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 229, in addressing a party's disobedience to discovery orders applies equally here: " 'A party may disagree with a court order. He may believe it wrong-headed or a waste of

time or picayunish—but he disregards it at his peril.' " (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 229.)

To the extent plaintiffs contend Al Binali must demonstrate prejudice and show that she would have been served had the summons been published elsewhere, they again fail to cite authority for this principle. The service and the judgment are void. It is the judgment that is at issue, not plaintiffs' prejudice. Defendant need not show more than that the judgment on its face is a nullity. (See e.g., *OC Interior Services, LLC v. Nationstar Mortgage, LLC, supra,* 7 Cal.App.5th at pp. 1330–1331.)

**5.     Plaintiffs' Motion to Dismiss is Denied**

Lastly, plaintiffs moved to dismiss Al Binali's appeal based on the disentitlement doctrine—an equitable tool "by which an appellate court may stay or dismiss an appeal by a party who has refused to obey the superior court's legal orders." (*In re E.M.* (2012) 204 Cal.App.4th 467, 474.) Plaintiffs assert that we should dismiss her appeal because Al Binali did not appear for the judgment debtor exam. Al Binali contends that she did not appear at the judgment debtor exam because she was contesting personal jurisdiction in the motion to vacate and did not want to make a general appearance and thus waive her personal jurisdiction argument. (See *Mansour v. Superior Court* (1995) 38 Cal.App.4th 1750, 1757; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1688–1689 [appearance at judgment debtor exam could constitute general appearance, waiving service defect].) Because the judgment is void and the court never had jurisdiction over Al Binali, we conclude that Al Binali's failure to appear at the judgment debtor examination does not warrant dismissal of her appeal under the disentitlement doctrine. We deny the motion.

13

## DISPOSITION

We reverse the trial court's order denying the motion to vacate, and remand for the trial court to vacate the judgment. Defendant Rima Al Binali is awarded costs on appeal.


RUBIN, ACTING P. J.

WE CONCUR:


STRATTON, J.


DUNNING, J.*

---

\* Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.