Filed 6/7/24  Banning Heights Mutual Water Co. v. Lefebvre CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BANNING HEIGHTS MUTUAL WATER COMPANY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JAMES LEFEBVRE,<br><br>    Defendant and Appellant. | G063252<br><br>(Super. Ct. No. RIC10003348)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Riverside County, Chad W. Firetag, Judge.  Reversed and remanded with instructions.

James F. Lefebvre, in pro. per, for Defendant and Appellant.

Briggs Law Corporation, Cory J. Briggs and Nora Pasin for Plaintiff and Respondent.

## INTRODUCTION

Appellant James Lefebvre is a former California attorney who was sued by his old client, respondent Banning Heights Mutual Water Company. Respondent claimed it conducted searches to locate appellant in order to serve him with process but it never effectuated service. Instead, respondent proceeded to take appellant's default at least twice, and eventually obtained a default judgment in 2012 after serving appellant via publication. Ten years later, in October 2022, appellant sought to vacate the judgment as void. The trial court denied his motion. We reverse, concluding the judgment was void on its face and must be vacated.

## FACTS

Respondent sued appellant for legal malpractice, breach of fiduciary duty, and breach of contract on February 26, 2010 (the specific facts of the case are irrelevant to this appeal). Respondent attempted to serve appellant by mail on May 6 and 7, 2010, by mailing the complaint to three addresses. Two of them were post office boxes (one in Pomona and the other in Redlands). The third was an apparent residential address on Winchester Drive in Rialto (the Rialto address). Respondent filed a proof of service by mail on May 26, 2010, but did not file any accompanying notice of acknowledgment of receipt executed by appellant.[1]

Nonetheless, respondent was able to take appellant's default on November 8, 2010, and it mailed the entry of default to one of appellant's post office box addresses the same day.[2] Respondent submitted a default prove-up packet which included a declaration from its general counsel, John McClendon, stating respondent had been

---

[1] Under Code of Civil Procedure section 415.30, service of summons by mail "is deemed complete on the date a written acknowledgment of receipt of summons is executed, if such acknowledgment thereafter is returned to the sender." (*Id.*, subd. (c).) If a plaintiff serves process via mail, proof of service of same must include the acknowledgment of receipt. (See Code Civ. Proc., § 417.10, subd. (a).) All further statutory references are to the Code of Civil Procedure.

[2] Why the document was not mailed to the other two addresses respondent clearly had for appellant, is not explained.

unable to locate appellant even with use of a private investigator. In an attempt to corroborate this, McClendon attached a single e-mail dated October 20, 2010, between himself and a private investigator. In it, McClendon summarized a conversation he had with appellant's ex-wife, Marjorie. She claimed ignorance of her former spouse's whereabouts and speculated as to whether he had left the state to go to New England, where two of his brothers had once talked about relocating. Marjorie also said she and others had been looking for appellant for their own purposes, and she promised to notify McClendon if she found him. In response to McClendon's summary, respondent's investigator advised that his searches for appellant using some utility records had been likewise futile, and suggested McClendon try locating appellant's cell phone and getting a billing address from it. He also suggested McClendon check on appellant's brothers' locations or addresses. The record does not tell us whether McClendon or respondent tried either of those suggested avenues. Respondent's prove-up packet included no specific details as to what the investigator did to locate appellant aside from checking the aforementioned utility records.

Respondent was unable to prove up the default because damages were unclear, and so it filed a first amended complaint on August 8, 2011. The register of actions indicates respondent again attempted to serve the amended complaint via mail, but we see no proof in our record of any such service. Once again, on January 25, 2012, the clerk entered appellant's default, this time on the amended complaint.

Almost two months *after* the default was entered, on March 19, 2012, respondent applied for an order for service by publication.[3] It sought to publish the summons in the Press Enterprise in Riverside. The application was accompanied by three declarations.

---

[3] We declined to allow the filing of a letter submitted after oral argument by respondent's counsel, Mr. Briggs, on this topic.

In the first declaration, dated March 6, 2012, respondent's outside counsel, Chad M. Van Hook, averred he had "personally conducted extensive online database searches" for appellant. These searches included grantor/grantee indexes and other real property records, property tax records, court records from San Bernardino and Riverside counties, state bar records, Google, Yahoo, phone directories, and online background and people search websites. He did not specify what he found in these searches. He followed up with counsel involved in litigation to which appellant was a party. He contacted the local post office where appellant had "once maintained an address" but "no information was available to provide." He also claimed to have mailed copies of the amended complaint to addresses he had obtained from searches (mostly post office boxes), but each time, the mailings came back as undeliverable with no forwarding address. He sent a process server to "at least two in state physical addresses" for appellant, but the process server was "unable to find any more information about" appellant. And he sent the process server "on more than one occasion" to Marjorie's presumed residence. It does not appear Van Hook personally spoke to Marjorie; rather, he referred back to McClendon's conversation with her. Van Hook claimed he lacked knowledge of the identity or whereabouts of any of appellant's relatives besides Marjorie[4], or any friends or coworkers. Van Hook's declaration does not specify the addresses at which he made these various attempts.

Van Taylor, a process server, also executed a declaration on March 6. He said he drove to the Rialto address on an unspecified date to try and serve appellant, but "was unable to locate" him. He claimed he was also unable to get any information "from the female that appeared to reside at the residence" because she was "uncooperative." Additionally, Taylor drove to Marjorie's office but was unable to get any more information about appellant's whereabouts.

---

[4] The brothers she had mentioned do not reappear in the record.

McClendon's declaration was the third, attesting to the "extensive efforts" respondent had made to try to locate appellant. He said he had "personally conducted extensive online database searches . . . all without success." He had apparently talked to Marjorie again since the 2010 conversation he summarized in his e-mail to the private investigator. This time, Marjorie said she did know appellant's whereabouts, but refused to reveal them. She told McClendon she would tell appellant respondent was seeking his default, but there is no confirmation she did. McClendon again referenced retaining a private investigator, but the investigator's inquiries, he said, had occurred over approximately one month between September and October 2010, two years prior. McClendon attached the same 2010 e-mail to his declaration, and no other communications with the investigator.

The trial court granted respondent's application on March 19, 2012, requiring the summons to be published in the Press Enterprise over four successive weeks. In the latter part of its order, the court required respondent to file a declaration at the expiration of the time for publication stating either that it had sent a copy of the summons and complaint to appellant[5], or that appellant's address had not been ascertained. A proof of publication was filed on April 19, 2012, stating the summons had been published in the Press Enterprise on March 23 and 30 as well as April 6 and 13, 2012. However, respondent filed no declaration as required by the latter part of the order.

On May 21, 2012, respondent requested the court enter default judgment as to the amended complaint, seeking a total of $167,458.27 in damages.[6] Respondent also

---

[5] The court's order was entered using Riverside Superior Court form RI-013. We note the form, at least as it exists in the record, requires only that "a copy of said summons or citation and of said complaint or petition in this action be forthwith deposited in the" mail to the defendant "if his address is ascertained before expiration of the time prescribed for the publication of this summons or citation . . . ." Section 415.50, subdivision (b), however, requires such an order to also "direct that a copy of . . . the order for publication" be mailed to the defendant if his address is ascertained, not just the summons and complaint. We encourage the superior court to review this form to ensure it is fully compliant with the statute in its language.

[6] This request was made on the same entry of default respondent had taken on January 25, 2012, *before* it had ever moved for service by publication.

5

mailed the request for default judgment to two post office box addresses. One was the Pomona post office box, and the other was located in Berlin, New Hampshire. Respondent once again attached a declaration from McClendon dated January 18, 2012. This declaration contained the same information regarding appellant's whereabouts as McClendon's previous declaration. On August 6, 2012, the court entered default judgment in respondent's favor against appellant for the exact amount sought, but it sat uncollected for years.

On August 4, 2022, respondent applied to renew the default judgment, this time with interest. The total sought had now doubled to $334,869.86. Respondent mailed the document to the Rialto address, to Marjorie's office address, to a post office box in San Bernardino, and to an apartment in Redlands. The clerk renewed the default judgment.

On October 14, 2022, appellant finally surfaced to file a "motion to vacate void judgment." In the motion, appellant argued the default judgment should be set aside as void because respondent failed to comply with the court order allowing service by publication.

The trial court denied appellant's motion on December 22, 2022. It concluded any error by respondent in failing to file the post-publication declaration was essentially harmless because the declarations submitted indicated respondent never discovered appellant's true address.

## DISCUSSION

Appellant contends the default judgment is void due to respondent's failure to file the post-publication declaration. But he also argues the court lacked personal jurisdiction over him altogether because the application for service by publication was improper and defective. He claims respondent always knew where he could be served with process and it never made adequate attempts to serve him by other means. This appears to be the case.

6

Appellant moved for relief under section 473, subdivision (d), by which a trial court "may set aside any void judgment or order" on motion of either party. When reviewing a trial court's ruling on such a motion, we "face[] two separate determinations . . . whether the judgment is void and, if so, whether the trial court properly exercised its discretion in setting (or not setting) it aside." (*Kremerman v. White* (2021) 71 Cal.App.5th 358, 370.)

## I.  Void Judgment

A judgment is void on its face "when the invalidity is apparent upon an inspection of the judgment-roll," and it may be vacated at any time. (*Application of Behymer* (1933) 130 Cal.App. 200, 202.) Where "the complaint is not answered by any defendant," the judgment roll includes "the summons, with the affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment; . . . and in case the service so made is by publication, the affidavit for publication of summons, and the order directing the publication of summons." (§ 670, subd. (a).) We find the judgment roll in this case is facially defective in at least three ways.

### A.  Facial Defect in the Default Judgment

Where a defendant is served by publication, the clerk must enter default "upon the expiration of the time for answering, and upon proof of the publication and that" no responsive papers have been filed. (§ 585, subd. (c).) "The plaintiff *thereafter* may apply to the court for the relief demanded in the complaint; and the court shall hear the evidence offered by the plaintiff, and shall render judgment in the plaintiff's favor for that relief, not exceeding the amount stated in the complaint, . . . as appears by the evidence to be just." (*Ibid.*, italics added.)

Neither the respondent nor the trial court seem to have followed this process. The default judgment shows the clerk entered appellant's default on January 25,

2012.[7] But appellant had not yet been served with the summons and complaint. Mail service, if any, was inadequate because respondent had not filed any acknowledgment of receipt executed by appellant. And service by publication only occurred in late March and early April 2012, after appellant's default had already been entered. There was thus no entry of default after the actual service; judgment was entered on a default taken prematurely.

### B. Defects in the Judgment Roll

The judgment is also facially void for the reasons appellant gives. Respondent failed to file a post-publication declaration, a direct violation of the court's explicit order directing service by publication. Respondent openly admits its transgression, but tries to minimize the issue or explain it away. We are not persuaded it was a harmless oversight.

First, respondent argues neither section 415.50 (governing service by publication) nor section 417.10 (providing requirements for proof of service via publication) require plaintiff to file a post-publication declaration if the defendant's address is never ascertained. This is true, but it misses the point completely. When ordering service by publication, the trial court must also "direct that a copy of the summons, the complaint, and the order for publication be forthwith mailed to the party if his or her address is ascertained[.]" (§ 415.50, subd. (b).) Here, the trial court went one step further by requiring respondent to file a declaration at the expiration of the publication period stating *either* that it had sent appellant the summons and complaint at his ascertained location, *or* "that the address was not ascertained. . .at the expiration" of the period. The trial court clearly recognized service via publication "is on many occasions unlikely to result in actual notice," and permitted publication only on the

_____

[7] From our review of the record, no default should have been entered at all on January 25, 2012. Respondent's amended complaint added allegations and increased the amount of damages sought in its original complaint. Where a complaint increases the amount of damages sought, the filing of the amended complaint reopens any previous default by the defendant. (See *Leo v. Dunlap* (1968) 260 Cal.App.2d 24, 27-28.)

understanding that appellant could not be found. (*Olvera v. Olvera* (1991) 232 Cal.App.3d 32, 40 (*Olvera*).) It was entirely appropriate for it to order a continuing affirmation of this fact. "Personal service remains the method of choice under the statutes and the constitution. [Citations.] When substituted or constructive service is attempted, strict compliance with the letter *and spirit* of the statutes is required." (*Olvera*, *supra*, 232 Cal.App.3d at p. 41, italics added.) The court's order on publication reflected its understanding and concern about the spirit of the statutes without question, and strict compliance with that order was necessary.

Respondent also successfully argued below that it never found out where appellant was, and thus filing a post-publication declaration would have been a futile act simply reaffirming the status quo. Respondent's view of the utility or efficacy of the court's order is irrelevant. The trial court ordered it to file a declaration. Full stop. "A party may not with impunity simply ignore a court order even for professed 'good' reasons." (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 964 (*Calvert*).) The requirement of the order was not contingent on whether or not respondent located appellant. Indeed, by requiring respondent to file a declaration in either event, the trial court was accounting for the possibility that he would not be found.

We also find unconvincing respondent's assumption that a post-publication declaration would necessarily reaffirm the status quo. The order implicitly presumed respondent would continue its efforts to locate appellant. Yet the McClendon declaration filed in support of the default judgment was largely a rehash of his earlier declarations filed in the case. It did not reflect any recent efforts to locate appellant. Would continued effort have been successful? The trial court might have wanted to require more. It never got the chance.

Finally, respondent argues the trial court ratified its failure to file the declaration by entering judgment on appellant's default in August 2012. This same argument was made and rejected in *Calvert, supra,* 29 Cal.App.5th 954 as legally

9

unsupported. (*Id.* at p. 964.) And just as in *Calvert*, there is no evidence the lack of a post-publication declaration was ever specifically considered by the trial court when it entered the default judgment. (*Ibid.*) We will not attribute to the trial court a consideration or decision it did not make.

The second defect in the judgment roll here is visible in the affidavits for publication of summons. In part, section 415.50, subdivision (a) permits service via publication "if upon affidavit it appears to the satisfaction of the court . . . that the party to be served cannot with reasonable diligence be served in another manner specified" in Part 2, Title 5, Chapter 4, Article 3 of the code. The record reveals respondent was always aware of the Rialto address, even going back to the original complaint which was mailed there.[8] But the affidavits in support of publication only mention the Rialto address once, in process server Taylor's declaration. Taylor claimed he went there once, but did not say when. And his averments are opaque as to the efforts he took to figure out if appellant lived there. He simply said he was "unable to locate" appellant, which only establishes appellant was not there when he visited. He claims there was a female appearing to reside there who was uncooperative, but he made no effort to identify this person, and seems to have given up after that. Had Taylor tried to establish whether the Rialto address was a live one for appellant, he could have attempted substituted service under section 415.20. But there is no information in any of the affidavits to show specifically what respondent's investigation revealed on the Rialto address, nor the timeline under which it progressed. As such, the affidavits fail to show appellant could not be served at the Rialto address with reasonable diligence.[9]

---

[8]    Because it does, we deny appellant's motion to augment the record with a declaration explicitly stating the Rialto address is his home address. Whether or not the Rialto address was where appellant resided, respondent knew of it as an avenue of investigation.

[9]    Both respondent and the trial court refer to respondent's "extensive" efforts delineated in the Van Hook and McClendon declarations to discover appellant's address. We would not be so generous in our characterization. The declarations vaguely discuss searches conducted in various databases but never divulge the particulars of these searches or what they reflected about any given address.

**II.**         **Trial Court Discretion to Set Aside the Void Judgment**

Given the cumulative nature of the aforementioned defects in the judgment roll, we must conclude the trial court abused its discretion in denying appellant's motion to vacate. When the lack of personal jurisdiction appears from the face of the judgment roll, the judgment is a nullity, "ineffective and unenforceable. [Citation.] For that reason, an order incorrectly denying relief from a void judgment is also void, as it gives effect to the judgment." (*Calvert*, *supra*, 29 Cal.App.5th at p. 961.)

We also observe respondent let the default judgment sit for 10 years, and only once the judgment was renewed did appellant appear to receive any notice of it. This bolsters our conclusion that service was not proper in the first instance. An affirmance on our part would have required more complete efforts or a more complete record.

## DISPOSITION

The order denying appellant's motion to vacate void judgment is reversed and the matter remanded with the instruction that the trial court vacate the judgment. Appellant to recover costs on appeal.


                                             BEDSWORTH, ACTING P. J.

WE CONCUR:


DELANEY, J.


GOODING, J.

11