Filed 9/21/21  P. v. Mirsky CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEX SEMYON MIRSKY,<br><br>    Defendant and Appellant. | B297321<br><br>(Los Angeles County Super. Ct. No. BC211613) |

APPEAL from an order of the Superior Court of Los Angeles County, Edward B. Moreton, Jr., Judge.  Affirmed.

Law Offices of John T. Schreiber and John T. Schreiber for Defendant and Appellant.

Wallin & Russell, Michael A. Wallin and John C. Russell for Plaintiff and Respondent.

_____

Alex Semyon Mirsky appeals from the superior court's denial of a motion to vacate a 2013 renewal of a default judgment and the underlying default judgment. In 2003 the superior court entered a default judgment of over $7.8 million against Mirsky. Interinsurance Exchange of the Automobile Club of Southern California (Interinsurance Exchange) renewed the judgment in 2013, and in 2018 it mailed notice of the renewal to Mirsky at an address Interinsurance Exchange claimed was Mirsky's last known address. On January 22, 2019 Mirsky filed a motion to vacate the renewal of judgment, or, in the alterative, vacate the default judgment under Code of Civil Procedure section 473, subdivision (d).[1] The trial court denied the motion, concluding Mirsky's motion to vacate the renewal of judgment was untimely and Mirsky failed to meet his burden to show the default judgment was void.

On appeal, Mirsky contends the trial court abused its discretion in denying his motion to vacate. Mirsky argues the notice of renewal of judgment was sent to the wrong address and the default judgment was void because Interinsurance Exchange failed to personally serve him with the second amended complaint in light of substantive changes from the prior complaints. We affirm.

_____

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Criminal Actions for Fraud and Conspiracy*

In 1998 Mirsky was charged in an information filed in federal court with three counts of mail fraud and conspiracy "to defraud and to obtain money and property from various insurance carriers by means of false and fraudulent pretenses, representations and promises." The information alleged Mirsky invested in a Texas law office and used the office "to prepare and submit fraudulent medical and property damage insurance claims made by individuals who engaged in staged or fabricated automobile accidents. Also in furtherance of the scheme to defraud, defendant Mirsky recruited personal injury cases from cappers and other individuals who conducted staged and fabricated automobile accidents and referred them to the medical clinic and law offices in exchange for 50% or more of the fraudulent legal and medical payments."

In 1999 Mirsky was charged in a felony complaint filed in the Los Angeles Superior Court with insurance fraud (Pen. Code, § 550, subd. (a)(1)) and conspiracy to commit the crime of capping (Pen. Code, § 182, subd. (a)(1); Ins. Code, § 750.)[2] The complaint alleged Mirsky "did unlawfully and knowingly present and cause

---

[2]   Insurance Code section 750, subdivision (a), provides in relevant part, " any person acting individually or through his or her employees or agents, who engages in the practice of processing, presenting, or negotiating claims, including claims under policies of insurance, and who offers, delivers, receives, or accepts any rebate, refund, commission, or other consideration, whether in the form of money or otherwise, as compensation or inducement to or from any person for the referral or procurement of clients, cases, patients, or customers, is guilty of a crime."

to be presented a false and fraudulent claim for the payment of a loss and payment of a loss under a contract of insurance" and "did unlawfully conspire . . . to commit the crime of capping."

Mirsky entered into a negotiated plea of guilty to the charges in the federal and state actions. On July 13, 1999 the superior court sentenced Mirsky to five years formal probation on the condition he serve a year in state prison (to run concurrent with his federal prison sentence) and to pay $20,000 in restitution. On July 12, 1999 the federal court sentenced Mirsky to 21 months in federal prison.

B. *The Civil Action and Default Judgment*

On June 8, 1999 Interinsurance Exchange filed a qui tam action on behalf of the State of California against Mirsky and 26 other defendants for violation of the Insurance Fraud Prevention Act (Ins. Code, § 1871.7).[3] The complaint also asserted claims for constructive trust, equitable lien, restitution, and unfair business practices. The complaint alleged Mirsky operated a ring of law offices, attorneys, medical doctors, and medical billers who would stage automobile accidents for the purpose of making fraudulent insurance claims. Further, "[t]he ring knowingly and intentionally caused approximately 475 alleged automobile

---

[3] Insurance Code section 1871.7, subdivision (a), provides, "It is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits pursuant to Division 4 (commencing with Section 3200) of the Labor Code or to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer."

collisions to be reported to The Exchange as incidents which caused bodily injury. These collisions involved approximately 855 separate claimants. On information and belief each of these claimants was referred to one or more of the 'law office defendants' and 'medical defendants' in return for a fee, constituting capping." Interinsurance Exchange sought damages "in an amount equal to three times the amount of each claim for compensation by the defendants, plus a civil penalty of $10,000 for each violation of California Insurance Code § 1871.1." Interinsurance Exchange filed a statement of damages seeking $15,674,374.50 from Mirsky.

On August 9, 1999 the complaint, summons, and statement of damages were served on Mirsky by substituted service on Mirsky's mother at Mirsky's home address at 1411 Fuller Avenue, Apartment 206, in Hollywood, California, with a copy mailed to the same address. Mirsky did not respond to the complaint. According to Mirsky's opening brief, Mirsky surrendered himself one month after service of the complaint to federal authorities to begin his 21-month federal prison sentence.

On January 10, 2000 the trial court sustained a demurrer brought by a codefendant as to the claims alleging fraud (and the related remedies), allowing "leave to amend with a representative sample of the facts underlying the accidents and claimants . . . From the complaint in this case, it doesn't seem possible for the defendant to know what he is accused of having done. A complaint must at least give some notice as to this." The court overruled the demurrer as to the unfair competition claim, as to which "[a] valid claim under Business & Professions Code Section 17200 is stated."

On May 9, 2000 Interinsurance Exchange filed its first amended complaint. Mirsky was served with the first amended complaint by mail at the Fuller Avenue address. On July 21, 2000 Interinsurance Exchange filed a second amended complaint, which generally contained the same allegations and prayer for relief, but it attached 27 exhibits identifying each of "the claims submitted to the Exchange for which a defendant is individually liable to the Exchange." As to Mirsky, Exhibit A identified 318 separate claims for which Interinsurance Exchange sought $15,674,374.50.[4] The second amended complaint was also served by mail on Mirsky at his Fuller Avenue address.

On February 15, 2001 Interinsurance Exchange filed a request for entry of default. Interinsurance Exchange served Mirsky by mail at the federal prison in Nevada. On February 20, 2001 the superior court clerk entered Mirsky's default.

On March 12, 2001 Mirsky, representing himself, filed and served Interinsurance Exchange with an application for order extending time to answer.[5] He listed his address on the application as "1411 N. Fuller" in Los Angeles. In his application, Mirsky stated he "was served with the 'second

---

[4] Exhibit A calculated the total amount of penalties and damages by multiplying a civil penalty of $10,000 (under Insurance Code section 1871.7, subdivision (b)), times 318 claims, for a total of $3,180,000, plus $12,494,374.50 in treble damages ($4,164,791.50 tripled), for total damages and penalties of $15,674,374.50.

[5] On our own motion we augment the record with a file-stamped copy of Mirsky's application, dated March 12, 2001. (Cal. Rules of Court, rule 8.155(a)(1)(A).) The appellate record does not contain a ruling on Mirsky's application.

amended complaint' on December 14th 2000 while [he] was incarcerated at United States Prison Camp Nellis, Nevada," and he has "not willfully failed to file a responsive pleading as the [p]laintiff in this case [as] alleged in their '[r]equest for [e]ntry of [d]efault.' Unfortunately, because of my incarceration, I was unable to timely respond." Mirsky requested "[a]n extension of 30 days . . . in order to prepare and file the answer and to avoid a default."

On August 31, 2001 Interinsurance Exchange took Mirsky's deposition in this action in Los Angeles.[6] Mirsky invoked his Fifth Amendment privilege against self-incrimination as to all questions.

C.   *Entry of Default Judgment*
On January 9, 2003 Interinsurance Exchange filed a request for default judgment against Mirsky. Interinsurance Exchange served Mirsky with the request, supporting declarations, and a supplemental memorandum by first-class mail at the Fuller Avenue address. Daniel Brogdon, the assistant group manager for Interinsurance Exchange, stated in his declaration that "Mirsky's total statutory liability is $8,997,548.99. The liability amounts are calculated pursuant to the factors established by Insurance Code section 1871.1 . . . . With a total of 176 claims submitted by Mirsky, and an aggregate amount of the claims at $2,412,516.33, Mirsky is liable to the Exchange for not less than $8,997,548.99."

---

[6]   According to Mirsky, he was released from prison in June 2001.

7

After a hearing on January 29, 2003, the trial court (Judge Carolyn B. Kuhl) granted Interinsurance Exchange's request for a default judgment against Mirsky and others.  Mirsky did not appear at the hearing.  On February 20 the court entered a default judgment against Mirsky in the amount of $7,131,333.99 in penalties under Insurance Code section 1871.7, plus attorneys' fees of $739,223.90, for a total of $7,870,557.89.  On April 9, 2003 Interinsurance Exchange served Mirsky with notice of entry of court judgment by first-class mail at his Fuller Avenue address.

D.    *Renewal of Court Judgment*

On February 15, 2013 Interinsurance Exchange filed an application for and renewal of judgment against Mirsky.  The application listed Mirsky's "last known address" as 3336 Dona Rosa Drive in Studio City, California.  Interinsurance Exchange requested $15,728,207.88, including postjudgment interest.  The same day the superior court entered the renewal and issued a notice of renewal of judgment, which provided:  "1.  This renewal extends the period of enforceability of the judgment until 10 years from the date the application for renewal was filed.  [¶] 2. If you object to this renewal, you may make a motion to vacate or modify the renewal with this court.  [¶]  3.  You must make this motion within 30 days after service of this notice on you."  Interinsurance Exchange's attorney (Michael Wallin) averred in his declaration that the application for renewal and court's notice of renewal were mailed to Mirsky.  However, the appellate record does not contain a proof of service.

8

E.	*Judgment Debtor Examination of Mirsky*

On June 6, 2018 Wallin served Mirsky again with the application and notice of renewal of judgment by first-class mail to the Dona Rosa address.  It was not returned as undeliverable.

On August 16, 2018 the superior court ordered Mirsky to appear for a judgment debtor examination on October 19.  In September 2018 Wallin mailed the court order scheduling Mirsky's debtor examination to Mirsky at the Dona Rosa address.  On September 24 Wallin received a voicemail message from attorney Victor Sherman stating he represented Mirsky, he understood Wallin was trying to serve Mirsky, and he agreed to accept service on Mirsky's behalf.  Wallin emailed the court's examination order to Sherman the same day.

On October 17, 2018 Wallin sent an email to Sherman reminding him of the upcoming examination.  Sherman advised Wallin that Mirsky would be asserting his Fifth Amendment privilege against self-incrimination, and Mirsky did not want to appear at the examination because he had not been properly served with the notice of renewal of judgment.  Another attorney representing Mirsky, Y. Gina Lisitsa, also stated to Wallin that Mirsky had not been properly served with the application for and notice of renewal of default judgment.  In response, on October 18 Wallen emailed the application, notice of renewal, and proof of service to Lisitsa.

On October 19, 2018 Mirsky appeared in court for his examination.  The trial court, over Mirsky's objection, ordered the examination to go forward.  Mirsky invoked his Fifth Amendment privilege against self-incrimination.

F.    *Motion To Vacate Renewal of Judgment, or Alternatively, the Default Judgment*

On January 22, 2019 Mirsky filed a motion under section 683.170 for an order vacating the renewal of judgment, or, in the alternative, a motion under section 473, subdivision (d),[7] for an order vacating the default judgment.  The motion asserted the renewal of judgment should be vacated because Mirsky did not reside at the Dona Rosa address where Interinsurance Exchange had mailed the notice of renewal.  Mirsky stated in his supporting declaration, "I did not live at 3336 Dona Rosa Drive, Studio City, California 91604 specifically on June 6, 2018 or for many years prior to the present. . . .  [¶]  . . . [¶]  7.  I was not served with the Notice of Renewal of Judgment at that time or at any time.  [¶]  8.  I did not receive the Notice of Renewal of Judgment at that time or any time."  As to the default judgment, Mirsky argued the judgment was void because it was substantively different from the initial and first amended complaint and, therefore, service by mail was not sufficient to support entry of the judgment.

In its opposition, Interinsurance Exchange argued the motion to vacate the renewal of judgment was untimely under section 683.170, subdivision (b), which requires the motion be filed "[n]ot later than 30 days after service of the notice of renewal pursuant to [section] 683.160."  Interinsurance Exchange asserted that even using the later service date on June 6, 2018 of the notice of renewal of judgment, Mirsky was required to file his

---

[7]    Section 473, subdivision (d), provides "[t]he court may, . . . on motion of either party after notice to the other party, set aside any void judgment or order."

10

motion 30 days later, by July 6, 2018, but waited until January 22, 2019 to file his motion.

Interinsurance Exchange also argued the notice of renewal of judgment was properly served by first-class mail at Mirsky's last known address pursuant to section 683.160, subdivision (a), which provides for service of the notice of renewal on the judgment debtor "personally or by first-class mail." Interinsurance Exchange argued it diligently searched for Mirsky's address in 2013 and 2018, and its investigator, Scott Shaw, previously met with Mirsky at the Dona Rosa address.[8] In addition, Interinsurance Exchange submitted evidence that Mirsky transferred the house on Dona Rosa Drive to his then-wife Yelena in 1997 as part of the marital dissolution action, and the utilities were in Yelena's name.[9] Further, Mirsky had notice at least by October 2018, when Wallin emailed to Lisitsa and Sherman a copy of the application for renewal of judgment, notice of renewal of judgment, and proof of service.

As to the motion to vacate the default judgment, Interinsurance Exchange disputed it was required to personally serve Mirsky with the second amended complaint, asserting the second amended complaint was "*nearly identical* to the [o]riginal [c]omplaint and the [first amended complaint]. The amendments did not increase the amount of damages sought in the [o]riginal [c]omplaint, nor did they add any new theories of liability on which the [j]udgment is based." In addition, Interinsurance

---

[8] Shaw stated in his declaration that he met with Mirsky in 1997 at Mirsky's residence, but the declaration does not specify the address.

[9] We refer to Yelena Mirsky as Yelena to avoid any confusion.

Exchange argued the motion to vacate was untimely under section 473.5, subdivision (a), which requires a motion to vacate for lack of actual notice of service of the complaint "be served and filed within a reasonable time, but in no event exceeding the earlier of: (i) two years after entry of a default judgment against him or her; or (ii) 180 days after service on him or her of a written notice that the default or default judgment has been entered."

Mirsky in his reply argued the Dona Rosa property had been sold to a developer in December 2017, and therefore, it was no longer Mirsky's correct address. Mirsky submitted a supplemental declaration attaching a grant deed transferring the property to The Fredonias LLC on November 13, 2017. He averred that by 2018 the property had been demolished, leaving only four walls standing.

### G.     *The Hearing and Denial of Mirsky's Motion*

At the March 20, 2019 hearing, Lisitsa argued there was not effective service of the notice of renewal because "it was mailed to an address where defendant did not live for years." Wallin responded that the notice of renewal was mailed to Mirsky's "last known address," and Mirsky "could have very easily provided the Automobile Club with something that says here's my address and, by the way, I don't live there anymore. He did not do so." Wallin also referred to his "diligent" investigation in 2013 and 2018 to locate Mirsky's address.[10]

---

[10]     Although Wallin repeatedly argued his firm conducted a diligent search to determine Mirsky's last known address, Interinsurance Exchange did not submit a declaration explaining its diligent search and, as discussed, the Interinsurance Exchange's evidence of ownership of the Dona Rosa house shows

Further, Mirsky's attorney contacted Wallin after Mirsky was served in 2018 at the Dona Rosa address with the order scheduling the debtor examination, which was circumstantial evidence Mirsky lived at the address. In addition, Mirsky had actual notice of the renewal of judgment by October 2018 when Wallin emailed the notice of renewal of judgment to Lisitsa and Sherman.

Lisitsa also argued the last known address was the Fuller Street address that was listed on Mirsky's application for order extending time to answer filed in March 2001. Wallin responded that it appeared Mirsky's application was never filed in the trial court (as noted, it was), and in any event the address was 17 years old.

The superior court denied the motion to vacate the renewal of judgment as untimely, explaining, "I think that there is sufficient evidence that it was reasonable for the Interinsurance Exchange to conclude that this was—to support their assertion this was . . . the last known address that they had for Mr. Mirsky. So I think that they complied with the service requirements by serving it to that location." The court added, "I'm particularly comfortable with making that ruling because there is no due process concern here, because it is undisputed that, in fact, Mr. Mirsky received notice of the renewal."

With respect to Mirsky's argument the default judgment was void, Lisista argued the second amended complaint should have been personally served because its inclusion of the exhibits substantially changed the allegations, and further, the judgment

that Mirsky transferred the house to Yelena in 1997 and the utilities were in the name of Yelena, not Mirsky.

13

exceeded the prayer for relief in the complaint. The trial court found in response that "there's no substantial difference between the original complaint which clearly was served and the first and then second-amended complaints." Further, the court found the prayer for relief in the second amended complaint was adequately alleged, although it "requires some math." After taking the matter under submission, the trial court denied Mirsky's motion, explaining, "The motion is not timely under [section] 683.170. Moving Party did not demonstrate that the default judgment is void." Mirsky timely appealed.

## DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Denying Mirsky's Motion To Vacate the Renewal of the Judgment*

   1. *Renewal of Judgments*

"Before the 1982 enactment of the Enforcement of Judgments Law (§ 680.010 et seq.), the sole method by which a judgment creditor could extend the enforcement period of a money judgment was by obtaining a new judgment against the judgment debtor in an independent action based on the judgment." (*Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 260 (*Goldman*); accord, *Altizer v. Highsmith* (2020) 52 Cal.App.5th 331, 338 (*Altizer*).) Under the Enforcement of Judgments Law, a money judgment is enforceable for 10 years from the date it is entered. (§ 683.020; *Altizer*, at p. 338; *Goldman*, at p. 260.) The law created a summary procedure for renewal of the judgment by the creditor by filing an application for renewal with the clerk of the court before expiration of the

14

10-year period. (§ 683.130, subd. (a); *Altizer*, at p. 338; *Goldman*, at p. 260.)

"The renewal process is simple. The creditor seeking renewal files an application with the court which entered judgment. The application must contain information necessary to compute the amount of the judgment as renewed. (§§ 683.120, subd. (a), 683.140, subd. (d).) Simply filing the application renews the judgment in the new amount. (§§ 683.120, subd. (b), 683.150, subd. (a).)." (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1057; accord, *Goldman, supra*, 160 Cal.App.4th at p. 260.) After judgment is renewed, the notice of renewal must be served on the judgment debtor. As section 683.160 provides, "(a) The judgment creditor shall serve a notice of renewal of the judgment on the judgment debtor. Service shall be made personally or by first-class mail and proof of service shall be filed with the court clerk."

However, "[t]he renewal of a judgment pursuant to this article may be vacated on any ground that would be a defense to an action on the judgment." (§ 683.170, subd. (a).) Thus, failure to serve the summons and complaint "is a defense which may be raised on a motion to vacate renewal of a judgment." (*Fidelity Creditor Service, Inc. v. Browne (2001)* 89 Cal.App.4th 195, 203 (*Fidelity*); see *Goldman, supra*, 160 Cal.App.4th at p. 262 ["[I]n making a statutory motion under section 683.170, subdivision (a), to vacate a renewal of judgment, the debtor may contend that the court lacked personal jurisdiction *at the time of the initial judgment*."].) As the *Fidelity* court explained, "When a party concedes that a judgment, even if valid on its face, is invalid for lack of proper service, this court must conclude the judgment is void," which provides a basis for a motion to vacate the renewal of

15

a judgment.  (*Fidelity*, at p. 207; see *Hill v. City Cab & Transfer Co.* (1889) 79 Cal. 188, 190-191 [where trial court found defendant had not been served with summons and complaint, although the judgment was valid on its face, it was void, and an action may not be maintained on the judgment].)

Any motion to vacate the renewal of a judgment must be filed "[n]ot later than 30 days after service of the notice of renewal." (§ 683.170, subd. (b).)  "A successful motion under section 683.170 does not affect the validity of the default or the default judgment. [Citation.]  A successful motion under section 683.170 vacates only the renewal of the judgment thereby precluding its extended enforceability under section 683.120." (*Fidelity, supra*, 89 Cal.App.4th at pp. 203-204.)  Where the defendant moves to vacate the renewal of judgment, the 30-day deadline applies, but not the deadline for filing a motion to vacate a default or default judgment under section 473.5.  (*Fidelity*, at p. 204.)

"The judgment debtor bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under section 683.170.  [Citations.]  On appeal, we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion."  (*Fidelity, supra*, 89 Cal.App.4th at p. 199; accord, *Rubin v. Ross* (2021) 65 Cal.App.5th 153, 161.)  To the extent the trial court's resolution of the motion to vacate the renewal of judgment requires determination of a question of law, we review the trial court's ruling de novo.  (*Rubin*, at pp. 161-162.)

16

2.  *Mirsky's motion to vacate the renewal of judgment was timely*

It is undisputed that the renewal of judgment was entered on February 15, 2013, and on June 6, 2018 notice was mailed to Mirsky at the Dona Rosa address.  Thus, if service was proper, Mirsky's filing of a motion to vacate the renewal of the judgment under section 683.170 on January 22, 2019—over seven months later—was untimely.  Mirsky contends his motion was timely because "service was at an address that Mirsky had not resided at for many years."  Interinsurance Exchange argues service of the motion was untimely because Interinsurance Exchange properly served Mirsky at his last known address, which was the Dona Rosa address.  Mirsky has the better argument.

Section 683.160, subdivision (a), provides for service of the renewal of judgment "personally or by first-class mail." Section 684.120, subdivision (a), provides, in turn, "Except as otherwise provided in this title, if a writ, notice, order, or other paper is to be served by mail under this title,[11]  it shall be sent by first-class mail (unless some other type of mail is specifically required) . . . , in a sealed envelope, with postage paid, addressed as follows:  [¶]  (1) If an attorney is being served in place of the judgment creditor or judgment debtor as provided in Section 684.010 or 684.020, to the attorney at the last address given by the attorney on any paper filed in the proceeding and served on the party making the service.  [¶]  (2) If any other person is being served, to such person at the person's current mailing address if known or, if unknown, at the address last

---

11      Sections 683.160 and 684.120 are both within Title 9 of Part 2 of the Code of Civil Procedure.

17

given by the person on any paper filed in the proceeding and served on the party making the service. [¶] (3) If the mailing cannot be made as provided in paragraph (1) or (2), to the person at the person's last known address."

Under section 684.120, subdivision (a), because service was not on an attorney for Mirsky, service was required "at the address last given by the person on any paper filed in the proceeding and served on the party making the service." (§ 684.120, subd. (a)(2).) The only address given by Mirsky in this action is the Fuller Avenue address listed on Mirsky's March 12, 2001 application. Thus, service on Mirsky's "last known address" under section 684.120, subdivision (a)(3), was not proper because that subdivision only applies where "the mailing cannot be made as provided in paragraph (1) or (2)," which is not the case here.[12]

At the hearing on Mirsky's motion to vacate the renewal of judgment, Interinsurance Exchange argued Mirsky never filed

---

[12] Further, substantial evidence did not support the superior court's finding that the Dona Rosa address was Mirsky's last known address. Wallin argued at the hearing that Interinsurance Exchange had presented evidence that (1) Mirsky or his wife owned the Dona Rosa house from 1997 to 2013; (2) the utilities were in Mirsky's or Yelena's name; (3) investigator Shaw met with Mirsky in the Dona Rosa house in 1997; and (4) Interinsurance Exchange's diligent public records search showed Mirsky lived at the Dona Rosa address. But the evidence showed that after 1997 the house and utilities were in Yelena's name, who by then was Mirsky's ex-wife, and no evidence was submitted showing a public records search by Interinsurance Exchange or that Shaw's interview of Mirsky was in the Dona Rosa house.

his March 12, 2001 application for an order extending the time for him to file an answer to the complaint. And the superior court apparently was not aware that the application had been filed. In light of our augmentation of the record with the filed application, service on the Dona Rosa address was not effective service. Thus, Mirsky's motion to vacate the renewal of judgment was timely. (See § 683.170, subd. (b) [Any motion to vacate the renewal of a judgment must be filed "[n]ot later than 30 days after service of the notice of renewal."]; *Altizer, supra,* 52 Cal.App.5th at p. 339 ["Once the notice of renewal is served, the debtor has 30 days to make a motion to vacate or modify the renewal."].)

3. *The superior court did not abuse its discretion in denying the motion to vacate the renewal of judgment*

Although we have concluded Interinsurance Exchange did not properly serve Mirsky with the notice of renewal of judgment, it does not follow that the renewal of judgment was subject to attack for lack of proper service. As the Court of Appeal explained in *Goldman, supra,* 160 Cal.App.4th at page 262, footnote 4, "there is no statutory requirement that the notice of renewal be served on the judgment debtor in order for the renewal to be effective. (See § 683.160.) 'Service on the judgment debtor is not necessary to renew the judgment. However, *no writ of execution* can issue on the *renewed* judgment until proof of service of the Notice has been filed with the court clerk. Nor, pending filing of proof of service, may the judgment creditor commence any other enforcement proceeding (e.g., examination of judgment debtor), unless it would have been available under the *nonrenewed* original judgment. [Citations.] Thus, there is no

19

specified time period within which the renewal of judgment must be served on the judgment debtor." (Accord, *Altizer, supra*, 52 Cal.App.5th at p. 339; see § 683.160, subd. (b) ["Until proof of service is filed pursuant to subdivision (a), no writ may be issued, nor may any enforcement proceedings be commenced to enforce the judgment, except to the extent that the judgment would be enforceable had it not been renewed."].)

However, as discussed, a debtor may, as here, raise failure to serve the summons and complaint as a defense in a motion to vacate renewal of a judgment. (*Fidelity, supra*, 89 Cal.App.4th at p. 203.) Because we conclude below that Interinsurance Exchange properly served Mirsky with the summons and complaint, as well as the second amended complaint, the superior court did not abuse its discretion in denying the motion to vacate the renewal of judgment.[13]

B.     *The Trial Court Did Not Err in Finding the Default Judgment Was Not Void and Denying Mirsky's Motion To Vacate the Judgment*

Mirsky does not challenge service of the initial complaint by substituted service. Instead, Mirsky contends the default judgment was void because Interinsurance Exchange was

---

[13]     Although the superior court denied the motion to vacate the renewal of judgment based on the untimeliness of Mirsky's motion, the court also found the default judgment was not void. Further, "it is a settled appellate principle that if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning." (*Young v. Fish & Game Com.* (2018) 24 Cal.App.5th 1178, 1192-1193; accord, *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 479.)

required to serve him by personal service with the second amended complaint in light of substantive differences between the initial and second amended complaint. Because the second amended complaint was not substantively different from the initial complaint in any significant respect, service by mail was proper.[14]

"When a court lacks jurisdiction in a fundamental sense, such as lack of authority over the subject matter or the parties, an ensuing judgment is void. [Citation.] To establish personal jurisdiction, it is essential to comply with the statutory procedures for service of process. [Citation.] Accordingly, "'a default judgment entered against a defendant who was not served with a summons in the manner prescribed by statute is void."'" (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1330-1331; accord, *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961.)

"'We review de novo the trial court's determination that a default judgment is or is not void.'" (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018; accord, *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020 (*Pittman*) ["The trial court's determination whether an order is void is reviewed de novo; its decision whether to set aside a void order is reviewed for abuse of discretion."]; *Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822.) As the *Pittman* court explained, "[T]he reviewing court 'generally faces two separate determinations when considering an appeal based on section 473,

_____

[14] Because we reach whether the default judgment was void for purposes of Mirsky's motion to vacate the renewal of judgment, we do not reach whether his motion was untimely.

21

subdivision (d): whether the order or judgment is void and, if so, whether the trial court properly exercised its discretion in setting it aside.'" (*Pittman*, at p. 1020.)

"After a defendant's default has been entered, if "'a complaint is amended in matter of substance as distinguished from mere matter of form, the amendment opens the default, and unless the amended pleading be served on the defaulting defendant, no judgment can properly be entered on the default'" and any judgment is thus void." (*Paterra v. Hansen* (2021) 64 Cal.App.5th 507, 529 (*Paterra*); accord, *Sass v. Cohen* (2020) 10 Cal.5th 861, 880 ["It is true that amending complaints in this fashion [to allege the amount of estimated damages] would open the default and give defendants another opportunity to respond."].)

As the Court of Appeal explained in *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 442-443 (*Engebretson*), "When a complaint is served, the defendant faces the decision to contest the action (perhaps seeking to negotiate a settlement at the same time) or to remain aloof and risk the entry of default. If the defendant fails to appear in the action after valid service of process, it is reasonable to assume the latter course has been chosen. Thereafter, if the complaint is amended in a way which would materially affect the defendant's decision not to contest the action, this new circumstance should be brought home to the defendant with the same force as the notification of the original action. If the amended complaint is merely served by mail, the defendant may assume the papers thus received only catalog the procedural steps taken by the plaintiff to obtain a default judgment on the original complaint and the defendant may fail to examine them with the care they deserve. . . . Service of the

22

amended complaint in the manner provided for service of summons is much more likely to result in actual notice to the defendant that something has occurred requiring reassessment of the decision not to contest the action."

In contrast to *Paterra*, *Sass*, and *Engebretson*, Mirsky's default was entered after the second amended complaint was filed. But even if the reasoning in *Engebretson* applies here (see *Engebretson, supra*, 125 Cal.App.3d at pp. 441-442 [referring to "the well-established rule, reflected in section 1010, that an amendment of substance must be served before a valid default may be entered"]; § 1010 ["No bill of exceptions, notice of appeal, or other notice or paper, *other than amendments to the pleadings*, or an amended pleading, need be served upon any party whose default has been duly entered or who has not appeared in the action or proceeding." (italics added)], the second amended complaint was not substantively different from the initial complaint. "An amended complaint makes material changes when it increases the damages sought, or adds or changes a cause of action based on a different factual or legal theory. [Citations.] Based on the policies underlying the rule, 'the test for what is and is not a [material or] "substantive change" should focus on whether the [change] might give rise to any different amount or form of liability, or *indicate the existence of any defense or ground for avoiding liability*, not reasonably disclosed in the original complaint.'" (*Paterra, supra*, 64 Cal.App.5th at p. 530; accord, *Ostling v. Loring* (1994), 27 Cal.App.4th 1731, 1744 ["An amendment of the complaint is material if it subjects the defendant to increased damages."]; *Ford v. Superior Court* (1973) 34 Cal.App.3d 338, 343 [adding a new cause of action based on a different legal theory is a material change to the complaint]; *Leo*

23

*v. Dunlap* (1968) 260 Cal.App.2d 24, 27-28 [increasing amount of damages is a substantive change].)

In this case, the second amended complaint did not increase the amount of damages sought against Mirsky, add or change a cause of action based on different facts or legal theory, or indicate the existence of any defenses or grounds for avoiding liability that were not already reasonably apparent from the facts set forth in the initial complaint. The second amended complaint, as did the initial complaint, described the fraudulent conduct as consisting of a ring of law offices, attorneys, doctors, and medical billers who staged automobile accidents for the purpose of making fraudulent insurance claims. The second amended complaint clarified these allegations by attaching charts detailing what specific fraudulent claims were linked to each of the 27 defendants. While the initial complaint alleged there were 855 separate claimants, the second amended complaint narrowed the scope of damages sought against Mirsky by reducing the number of claimants to 318. Further, the initial complaint sought damages in the amount of three times the amount of each claim for compensation plus civil penalties of $10,000 for each violation of the insurance code; the second amended complaint likewise sought damages "in an amount equal to three times the amount of each claim for compensation by the defendants, plus a civil penalty of $10,000 for each violation of California Insurance Code § 1871.7 or Penal Code §§ 549 or 550." And the statement of damages served on Mirsky with the summons and initial complaint sought $15,674,374.50 in damages, as did Exhibit A to the second amended complaint.

Mirsky's reliance on *Sheehy v. Roman Catholic Archbishop of San Francisco* (1942) 49 Cal.App.2d 537 is unavailing. In

*Sheehy*, the father of a child who died at school as a result of injuries inflicted by other students sued the church that controlled operations of the school, the pastor, and others. (*Id.* at p. 538.) The pastor defaulted on the initial complaint, then failed to respond to an amended complaint that was not served on him. The court of appeal concluded the trial court should have vacated the default judgment against the pastor because there were substantive changes to the complaint, specifically, that the initial complaint alleged the child told the defendants his classmates were playing roughly, then after a demurrer filed by codefendants was sustained and the hearsay statements in the complaint stricken, the amended complaint alleged it was the father who told the defendants the classmates were playing roughly. (*Id.* at p. 540.) The Court of Appeal concluded the change was substantive because the father, by filing the second amended complaint, admitted the allegations in the complaint were not sufficient to state a claim. (*Id.* at pp. 540-541.) In contrast to *Sheehy*, by filing the second amended complaint, Interinsurance Exchange did not concede the factual allegations of the complaint did not state a claim. Although the second amended complaint provided additional specificity on which fraudulent claims were made as to which defendants for purposes of pleading the fraud claim, the unfair business claim was found to be sufficient. And the allegations as to Mirsky's leadership of a ring to commit insurance fraud remained the same. Further, Mirsky was well aware from the allegations in the initial complaint (and the prior criminal actions) what constituted the alleged fraudulent conduct for which Interinsurance Exchange sought damages and penalties. Moreover, unlike Sheehy, Mirsky was served with the second amended complaint and conceded in

25

his March 2001 application filed in the superior court that he had received it.  Therefore, Mirsky's contention he was not served with the second amended complaint because he was in federal prison in Nevada also fails.  (See *Liebovich v. Shahrokhkhany* (1997) 56 Cal.App.4th 511, 517 ["party's acknowledgment or admission of receipt by mail established or amounted to personal service"]; *Shearman v. Jorgensen* (1895) 106 Cal. 483, 485 [defendant's counsel admitted "he received the notice through the post-office December 9th, and this in law amounted to a *personal service*"].)

## DISPOSITION

The order denying Mirsky's motion to vacate the renewal of judgment or the default judgment is affirmed.  Interinsurance Exchange is entitled to recover its costs on appeal.


FEUER, J.

We concur.


SEGAL, Acting P. J.


IBARRA, J. *

---

*        Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.