Filed 2/14/23 Kravchuk v. Trelles CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIIA KRAVCHUK, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> OLIVIA TRELLES et al., <br><br> Defendants and Respondents. | H049882 <br> (Santa Clara County <br> Super. Ct. No. 18CV322457) |

This action arose out of a failed San Jose residential sales transaction involving appellant Mariia Kravchuk, as buyer, and Taylor Morrison of California, LLC (Taylor), as developer/seller. Respondents First American Financial Corporation (First American) and its employee, Olivia Trelles, were the escrow agents in the failed transaction. (Hereafter, First American and Trelles are referred to collectively as respondents.) Kravchuk initially filed suit in January 2018 alleging one cause of action for breach of contract against Taylor, only. In July 2020, Kravchuk filed a second amended complaint alleging seven causes of action, naming Taylor and eight additional defendants, including respondents. Although they were served, respondents never filed a responsive pleading to the second amended complaint.

After the court sustained Taylor's demurrer, Kravchuk filed a third amended complaint in November 2020 alleging the same seven causes of action and naming all

nine defendants. Kravchuk filed separate requests to enter default against respondents, which were thereafter entered. Immediately after service of the entry of default, respondents filed a motion for relief from default under Code of Civil Procedure section 473, subdivision (b) (§ 473(b)).[1] The trial court granted respondents' motion for relief from default in a formal order filed July 30, 2021. Respondents thereafter filed a demurrer to the third amended complaint as to each of the five claims asserted against them. The court sustained respondents' demurrer without leave to amend as to each of the five causes of action by formal order of December 17, 2021. A judgment of dismissal was entered in respondents' favor on January 14, 2022.

Respondents filed a memorandum of costs indicating that its statutory costs were $2,101.79. Kravchuk filed a motion to strike or tax, which the court denied on May 11, 2022.

On appeal, Kravchuk contends that the trial court erred with respect to three orders. First, she contends that the court erred in granting respondent's motion for relief from default under section 473(b). Second, Kravchuk asserts that the order sustaining respondents' demurrer to the third amended complaint was erroneous insofar as the court denied Kravchuk leave to amend as to the third and fourth causes of action for fraud[2] and civil conspiracy, respectively. She does not, however, argue that the court erred in sustaining the demurrer, and, as to three of the claims, does not claim error in the denial of leave to amend. Third, Kravchuk contends that the court should have granted her motion to strike or tax costs.

We conclude that the court did not abuse its discretion in granting respondents relief from default. We find that respondents' demurrer to the third amended complaint

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] Kravchuk referred to the third cause of action as a claim for "deceit." We will refer to that cause of action as a claim for fraud.

was properly sustained because Kravchuk failed to state a cause of action, and we conclude further that the court did not abuse its discretion by denying leave to amend the fraud and civil conspiracy claims because there was no reasonable possibility Kravchuk could amend her pleading to state viable causes of action against respondents. Lastly, we conclude that the court did not err in denying Kravchuk's motion to strike or tax costs. Accordingly, we will affirm the judgment of dismissal entered on January 14, 2022.

## I. PROCEDURAL BACKGROUND

### A. Prior Pleadings

On January 24, 2018, Kravchuk, then represented by counsel, filed a Judicial Council form complaint against Taylor alleging a claim for breach of written contract. She alleged that on or about March 9, 2017, she and Taylor entered into a written contract (the Agreement) for the purchase and sale of 73 Montecito Vista Drive, Unit #1 in San Jose (the Property). Kravchuk alleged that on or after October 31, 2017, Taylor breached the Agreement by failing to sell the Property to her.

On December 30, 2019, Kravchuk, as a self-represented litigant, filed a first amended complaint, alleging six causes of action against Taylor. The court, by order filed July 16, 2020, sustained Taylor's demurrer to the first amended complaint with leave to amend.

On July 27, 2020, Kravchuk, as a self-represented litigant, filed her second amended complaint, alleging seven causes of action and naming nine defendants: Taylor; three Taylor employees, Joyce Lee, Tina Longo, and Taylor Beck; Taylor's attorneys, James M. Ganion (Ganion), and two law firms, Collinsworth, Specht, Calkins & Giampaoli, LLP (CSCG), and Ulich Balmuth Fisher LLP; and respondents First American and Trelles. Kravchuk alleged four causes of action against respondents: conspiracy (fourth cause of action), aiding and abetting (fifth cause of action), intentional interference with prospective economic advantage (sixth cause of action), and negligent interference with economic advantage (seventh cause of action). Respondents were

3

served with the second amended complaint. Thereafter, counsel for respondents obtained the agreement of Kravchuk that respondents would not be required to respond to that pleading while demurrers to the second amended complaint brought by other parties were pending. By order filed November 12, 2020, the court sustained with leave to amend Taylor's demurrer as to two causes of action of the second amended complaint (conspiracy and aiding and abetting).

### B. Third Amended Complaint

On November 30, 2020, Kravchuk, as a self-represented litigant, filed her third amended complaint against the same nine defendants sued in the second amended complaint. The third amended complaint alleged seven causes of action and contained over 200 pages of exhibits. As is relevant to this appeal, the new pleading alleged five causes of action against respondents, namely, the four claims previously asserted in the second amended complaint, and a new claim for fraud (third cause of action).

### C. Entry of Default Against Respondents

On or about January 21, 2021, Kravchuk filed separate requests for entry of default against First American and Trelles. The defaults were entered by the court as of that date. As presented in respondents' motion for relief from default, the procedural history is complicated.

Although Kravchuk submitted requests to enter respondents' defaults on January 21, 2021, it is apparent that the clerk of the superior court initially rejected the request to enter First American's default, checking the box indicating that default was not entered and stating the reason as "No Proof of Service of Summons on file for third amended complaint."[3] Respondents' counsel asked Kravchuk on January 22, 2021, to withdraw her default requests, but Kravchuk refused to do so. After respondents' counsel

---

[3] The request to enter default against First American shows an "X" for the box indicating that default was not entered, a slash through that "X," and the typed reason for not entering default interlineated.

4

on February 25 submitted to the court for filing a demurrer and motion to strike the third amended complaint, counsel became aware, through service by Kravchuk on March 17, that defaults had been entered against both respondents, "apparently retroactively to January 21, 2021." The next day, respondents' counsel learned that the court had rejected the filing of respondents' proposed demurrer because of the defaults having been entered. Respondents' counsel on March 23 requested that Kravchuk set aside the defaults; Kravchuk did not respond to the request.

### D. Motion for Relief from Default

On March 24, 2021, respondents served a motion for relief from default. Kravchuk opposed the motion. In an order filed July 30, 2021, the court granted respondents' motion for relief from default.

### E. Demurrer to Third Amended Complaint

Respondents filed a demurrer to the third amended complaint, together with a motion to strike punitive damages claim in the Complaint. Respondents challenged causes of action alleged against them in the third amended complaint.

Kravchuk filed opposition to the demurrer combined with a request to continue the hearing. She did not argue against the merits of respondents' demurrer to the third amended complaint. Rather, Kravchuk's position was that the court should grant her leave to amend to cure any deficiencies.

The matter was called for hearing on December 14, 2021. The court issued a formal order on December 17, 2021, in which it sustained respondents' demurrer to the third through seventh causes of action of the third amended complaint without leave to amend.

On January 14, 2022, the court entered a judgment of dismissal in respondents' favor on the prior order sustaining demurrer without leave to amend.

Kravchuk filed a notice of appeal from the judgment on February 14, 2022.

5

**F.     Motion to Strike or Tax Costs**

Respondents filed a memorandum of costs after entry of judgment on January 21, 2022, requesting statutory costs of $2,101.79. Kravchuk filed a motion to strike or tax costs, which was opposed by respondents. By order filed May 11, 2022, the court denied the motion.

Kravchuk filed an amended notice of appeal on or about May 17, 2022, that identified the order denying her motion to strike or tax costs as one of the orders being appealed.

## II.     DISCUSSION

**A.     Order Granting Motion for Relief from Default**

### 1.     Applicable Law

Under section 473, subdivision (b) (§ 473(b)), "[t]he court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." There are two different aspects to seeking relief under section 473(b). (*Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 989 (*Lorenz*).) The statute permits relief from default, in the discretion of the trial court, upon a showing of the "mistake, inadvertence, surprise, or excusable neglect" of the party or the party's representative. (§ 473(b).) The second aspect of the statute is "an 'attorney affidavit' provision . . . [in which] a party is relieved from the consequences of his or her attorney's mistake, inadvertence, surprise, or *neglect*. Relief is available regardless of whether the attorney's neglect is excusable. [Citations.] Moreover, if the requirements of this provision are met, then relief is *mandatory*. [Citations.]" (*Lorenz*, *supra*, at p. 989, original italics.) The party moving for relief from default under section 473(b) must file the motion within a reasonable time but no longer than six months after entry of the order, and that party bears the burden of establishing

6

the right to the relief.  (*Austin v. Los Angeles Unified School Dist.* (2016) 244 Cal.App.4th 918, 929 (*Austin*).)

"While a request for relief under section 473(b) is entrusted 'largely' to the trial court's discretion [citation], the law strongly favors an exercise of that discretion in favor of granting relief." (*Shapiro v. Clark* (2008) 164 Cal.App.4th 1128, 1139 (*Shapiro*).) "Because the law favors disposing of cases on their merits, 'any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [citations].' " (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980.)

An order granting or denying relief from default under section 473 is reviewed for abuse of discretion.  " 'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse.' [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257 (*Zamora*).)  But if a default judgment or order is void on its face, the matter is a question of law that is reviewed de novo.  (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961 (*Calvert*); see also *Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440 [determination of whether default judgment void on its face because of improper service is subject to de novo review].)

### 2.    *Procedural Background*

Respondents made three alternative arguments in support of their motion for relief from default.  First, they asserted that the defaults entered against them were improper because they had not been properly served with process with respect to the third amended complaint.  Respondents argued that where, as was the case here, a defendant has not appeared in the case and a complaint is substantively amended, that amended complaint must be served in accordance with section 415.10 et seq.  Kravchuk's transmission of the third amended complaint by e-mail to respondents' counsel, respondents contended, was not effective service of process.  Second, respondents argued that, assuming arguendo that the defaults were proper, respondents were entitled to discretionary relief from

7

default under section 473, subdivision (b), based upon "counsel's mistake in interpreting Code of Civil Procedure Section 415.010, *et seq.*, the case law . . . interpreting service of process and appearance requirements, and [counsel's excusable] neglect in not filing a responsive pleading." Third, respondents contended that, assuming arguendo that the defaults were properly entered, they were entitled to mandatory relief from default under the statute based upon declaration of their counsel.

Kravchuk opposed the motion, and later filed a request for statement of decision.

In its order filed July 30, 2021, the court granted respondents' motion for relief from default, concluding that respondents had "[met] their burden of proof."

### 3. *There Was No Error*

Kravchuk argues that the court erred in granting respondents' motion for relief from default. She asserts that the court ignored her request for a statement of decision—made after the posting of the court's tentative decision—and therefore the doctrine of presumed findings should not attach to review of the court's order. She asserts further that the three arguments advanced by respondents below in support of their motion—(1) invalid service, (2) mistake and excusable neglect, and (3) mistake based upon counsel's affidavit—lacked merit.

### a. **Statement of Decision**

We first address Kravchuk's argument that the court's failure to issue a statement of decision following her request means that the doctrine of implied findings cannot apply to the court's order. The argument is without merit because it is based on the faulty legal premise that the court was required under section 662, upon timely request, to issue a statement of decision. As one court has explained, "In general . . . section 632 applies when there has been a trial followed by a judgment. [Citation.] It does not apply to an order on a motion. [Citation.] This is true even if the motion involves an evidentiary hearing and the order is appealable. [Citation.]" (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 [order after hearing on spousal support and attorney fees]; see

8

also *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148 [no statement of decision required for denial of motion to amend complaint]; *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 79-80 [statement of decision not required for order granting motion for equitable relief from judgment].)

As explained by one court, after concluding that no statement of decision was required in connection with the trial court's disposition of a motion, "The absence of a statement of decision does not affect the standard of review. We presume that the court's order is supported by the record; if there is substantial evidence in the record to support the court's implied finding of fact, the factual finding will be upheld. However, the conclusion the court reached based upon those findings of fact will be reviewed by this court for abuse of discretion." (*Higdon v. Superior Court* (1991) 227 Cal.App.3d 1667, 1671.)

### b.    Improper Service

We next consider Kravchuk's argument that because service of the third amended complaint was proper, respondents' claim that the defaults were erroneously entered has no merit.

Respondents asserted in their motion under section 473(b) that Kravchuk, by failing to serve them formally with the third amended complaint and instead serving their counsel by mail and e-mail, did not effect proper service. They argued that although they were properly served with the second amended complaint, they did not thereafter enter an appearance in the action. Respondents asserted that because the third amended complaint contained significant changes, Kravchuk was required to comply with the formal service of process requirements of section 415.10 et seq.

In support of their position, respondents relied upon below (as well as on appeal) the case of *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 441 (*Engebretson*). There, the defendant, properly served with the complaint, did not personally appear, and the plaintiff thereafter served the defendant by mail a statement

9

and an amended statement of damages that increased the amount as prayed in the original complaint. (*Id.* at p. 438.) The plaintiff then obtained a default, and later, a default judgment against the defendant. (*Ibid.*) The appellate court concluded that the defendant was entitled to personal service of the statements of damages that effectively were "amendment[s to the complaint] which significantly increase[] the amount of damages sought . . . [and were] amendment[s] of substance which must be served before a default [could] be entered. [Citation.]" (*Id.* at p. 440.)

Although the procedural circumstances are somewhat different from those presented here, the principles enunciated in *Engebretson* have equal application to this case. It cannot be disputed that, as to respondents, the additions to the third amended complaint—in which Kravchuk added a cause of action for fraud—constituted "an amendment of substance." (*Engebretson*, *supra*, 125 Cal.App.3d at p. 441; see also *Ford v. Superior Court* (1973) 34 Cal.App.3d 338, 343 (*Ford*) [amendment adding cause of action constitutes a substantive change in the pleading].) There is further no dispute that Kravchuk provided only *informal and indirect* service of the third amended complaint upon respondents: Rather than providing personal service on respondents, she served the pleading by e-mail and regular mail upon respondents' counsel on November 26, 2020.

It is apparent that Kravchuk's position, however, is that formal service under section 415.10 et seq. was not required because respondents had personally appeared prior to the filing of the third amended complaint. She argues that the various communications she had with respondents' counsel, including those concerning extensions of time to plead and counsel's proposed filing of a demurrer to the second amended complaint, constituted respondents' personal appearance in the action.

"A defendant appears in an action when the defendant answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, moves for reclassification pursuant to Section 403.040, gives the plaintiff written notice of appearance, or when an attorney gives notice of appearance for the defendant."

10

(§ 1014.) "The list of acts constituting an appearance set forth in Code of Civil Procedure section 1014 . . . is not exclusive. Instead, the determining factor is ' "whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed." [Citation.]' [Citation.]" (*Sierra Club v. Napa County Bd. of Supervisors* (2012) 205 Cal.App.4th 162, 171.) The acts of a defendant or his or her counsel in obtaining one or more extensions of time to file a responsive pleading or giving notice of intent to bring a motion in the future do not constitute an appearance under section 1014. (*Salmonson v. Streiffer* (1910) 13 Cal.App. 395, 397-398 (*Salmonson*); see also *Russell v. Landau* (1954) 127 Cal.App.2d 682, 698 [obtaining court order extending time to plead "did not have the effect of a general appearance in the action"].)

Here, the record does not support Kravchuk's argument that there was an appearance by respondents. There were indeed communications between respondents' counsel and Kravchuk in which the former identified perceived deficiencies in the second amended complaint, requested that she dismiss her pleading, and requested and obtained from Kravchuk an extension to plead while Taylor's demurrer to the second amended complaint was pending. This conduct, however, did not constitute respondents' general appearance in the action. (See *Salmonson*, *supra*, 13 Cal.App. at pp. 397-398.)

The record supports the implied finding of the trial court that there had been no appearance by respondents. Indeed, the record does not support a contrary finding. Since there had been no appearance by respondents, and since the third amended complaint adding a claim for fraud was a substantive change in the pleading (*Ford*, *supra*, 34 Cal.App.3d at p. 343), Kravchuk was required to comply with the formal service of process requirements of section 415.10 et seq. (See *Engebretson*, *supra*, 125 Cal.App.3d at pp. 440-441.) She did not properly serve respondents with the third amended complaint. Thus, as a matter of law, respondents were entitled to an order vacating their defaults. (See *Calvert*, *supra*, 29 Cal.App.5th at p. 961.)

11

### c.  Discretionary Relief

Kravchuk also contends that there were no grounds upon which the trial court, in its discretion, could properly grant respondents relief from default under section 473(b). She argues that respondents failed to show that their defaults were entered due to a mistake of law by counsel that was excusable.

An attorney's excusable mistake of law may justify the granting of relief from default under section 473(b).  " 'A party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable because the negligence of the attorney is imputed to his client and may not be offered by the latter as a basis for relief.'  [Citation.]  In determining whether the attorney's mistake or inadvertence was excusable, 'the court inquires whether "a reasonably prudent *person* under the same or similar circumstances" might have made the same error.'  [Citation.]" (*Zamora*, *supra*, 28 Cal.4th at p. 258, original italics.)  Whether the mistake is excusable is based upon " 'the reasonableness of the misconception and the justifiability of lack of determination of the correct law. [Citation.]  Although an honest mistake of law is a valid ground for relief where a problem is complex and debatable, ignorance of the law coupled with negligence in ascertaining it will certainly sustain a finding denying relief.  [Citations.]' [Citations.]" (*Anderson v. Sherman* (1981) 125 Cal.App.3d 228, 238 (*Anderson*); see also *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 345.)

In addition to the legal authority provided in the motion for relief from default, counsel for respondents, Dana Andreoli, provided in her declaration, inter alia, the following evidence in support of claimed mistake under section 473(b):  (1) Although respondents did not appear in the case and Andreoli, as their counsel, never agreed to accept service on their behalf, Kravchuk purportedly served respondents, by e-mail service on Andreoli, on November 26, 2020; (2) on December 14, 2020 (and prior to the submission of requests to enter default), Andreoli wrote to Kravchuk to inquire whether

12

she had personally served respondents with the third amended complaint, and she advised further that "[b]ecause [First American] and Ms. Trelles have not appeared in the action, service on counsel (and by email) is not effective under the Code of Civil Procedure"; (3) in response to that e-mail, Kravchuk claimed, without legal authority, that their prior communications had constituted respondents' general appearance; (4) Andreoli in reply reiterated that respondents had never appeared in the action; (5) on January 21, 2021, Kravchuk attempted to take respondents' defaults, and the next day, Andreoli asked Kravchuk to withdraw the requests for entry of default because respondents had not been served with the third amended complaint; (6) Kravchuk refused to withdraw the default requests; (7) Andreoli, to her surprise, became aware on March 17, 2021 (almost two months after the requests were initiated) that the defaults of respondents had been entered by the court, "apparently retroactively to January 21, 2021"; and (8) Andreoli requested on March 23, 2021, that Kravchuk stipulate to set aside the defaults, but she did not respond to the request.[4]

We have found, *ante*, that entry of the defaults was improper because respondents were never formally served with the third amended complaint as required. Because the court did not specify the ground or grounds upon which it granted relief from default, we address here—without agreeing that the entry of defaults was proper (because Kravchuk, as she contends, properly served the third amended complaint on respondents)—whether the court had grounds for granting discretionary relief from default (assuming it ruled on that basis). The record presented ample evidence to support the court's implied finding that the defaults were the result of the excusable mistake of law by counsel. Even

---

[4] Andreoli, in at least three e-mails in December 2020, advised Kravchuk that respondents had not been properly served with the third amended complaint but that, in lieu of personal service, she would accept service of the new pleading by notice and acknowledgment of receipt. The record shows that Kravchuk continued to dispute that the prior service of the third amended complaint was improper, and she did not follow up by serving Andreoli through notice and acknowledgment of receipt.

assuming the trial court did not affirmatively conclude that service of the third amended complaint was improper (because respondents had not appeared in the action), whether, in fact, respondents *had appeared*, and thus whether formal service of the amended pleading as provided under 415.10 et seq. was required, were " 'problem[s that were] complex and debatable.' " (*Anderson*, *supra*, 125 Cal.App.3d at p. 238.)

And there is no question that respondents established that they filed the motion for relief within a reasonable time. (*Austin*, *supra*, 244 Cal.App.4th at p. 929.) Respondents' counsel, Andreoli, became aware of the entry of the defaults on March 17, 2021; after making an unavailing request on March 23 that Kravchuk agree to set aside the defaults, on March 24, Andreoli submitted the motion for relief from default.

"[T]he law strongly favors an exercise of [the court's] discretion in favor of granting relief [from default]." (*Shapiro*, *supra*, 164 Cal.App.4th at p. 1139.) There was no abuse of discretion by the trial court in granting respondents' relief from default under section 473(b). (*Zamora*, *supra*, 28 Cal.4th 257.)[5]

**B.     Order Sustaining Demurrer Without Leave to Amend**

*1.     Applicable Law*

A party against whom a complaint or cross-complaint has been filed may file a demurrer to the pleading on particular grounds specified by statute, including the ground

---

[5] Because we conclude that the trial court did not err in granting the motion for relief from default for two of the reasons advanced by respondents, it is unnecessary for us to address whether the order was proper under the mandatory provision of the statute (see *Lorenz*, *supra*, 40 Cal.App.4th at p. 989) involving the submission of an attorney's affidavit of fault. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 [appellate courts will not address issues whose resolution is unnecessary to the disposition of the appeal].) Moreover, we note that the trial court in its order did not " 'direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties,' " as is required under the attorney affidavit aspect of section 473(b). (See *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839.) We infer from this omission that the court's order was not made on this basis.

that the challenged pleading fails to allege facts sufficient to constitute a cause of action. (§ 430.10, subd. (e).) A demurrer does not "test the truth of the plaintiff's allegations or the accuracy with which he describes the defendant's conduct. A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213 (*Committee on Children's Television*), superseded by statute as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227.)

We perform an independent review of a ruling on a demurrer and decide de novo whether the challenged pleading states facts sufficient to constitute a cause of action. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) "In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)

An appellate court reviews the denial of leave to amend after the sustaining of a demurrer under an abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).) Denial of leave to amend is reviewable "even though no request to amend [the] pleading was made" in the trial court. (§ 472c, subd. (a).) When a demurrer is sustained without leave to amend, the reviewing court must determine whether there is a reasonable possibility that the complaint could have been amended to cure the defect; if so, it will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 39.) " '[W]here the nature of the plaintiff's claim is

15

clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result.' " (*Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418, 421.)

The burden of establishing that there is a reasonable possibility that the complaint could have been amended to cure the defect "is squarely on the plaintiff. [Citation.]" (*Blank*, *supra*, 39 Cal.3d at p. 318; see also *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320 (*Campbell*).) The plaintiff must "identify specific facts showing the complaint can be amended to state a viable cause of action. [Citation.]" (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004 (*Minnick*).)

### 2. *Contentions By Kravchuk*

Kravchuk does not challenge the correctness of the trial court's order that Kravchuk failed to allege facts sufficient to state viable claims against respondents as to the third through seventh causes of action of the Complaint. She has therefore expressly abandoned any such claim of error. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 (*Tiernan*).)[6]

Kravchuk's claim on appeal is that the court erred in denying her leave to amend to allege viable claims for fraud (third cause of action) and conspiracy (fourth cause of action.) She has thus abandoned any challenge to the court's denial of leave to amend as to the fifth through seventh causes of action. (*Tiernan*, *supra*, 33 Cal.3d at p 216, fn. 4.)[7]

---

[6] In her opposition below, Kravchuk requested that the trial court continue the hearing on respondents' demurrer while a writ petition she had filed with this court concerning another order was pending. The trial court denied the continuance request, and Kravchuk does not challenge that ruling on appeal, which challenge is therefore abandoned. (*Tiernan*, *supra*, 33 Cal.3d at p 216, fn. 4.)

[7] There have been four prior appeals of orders arising out of the same action that have been decided adverse to Kravchuk. In two of those appeals, this court affirmed judgments of dismissals after the respective demurrers by defendants Lee and Beck to the third amended complaint were sustained without leave to amend. (See *Kravchuk v. Lee*, Jun. 21, 2022, H049558 [nonpub. opn.]; *Kravchuk v. Beck* (Jun. 21, 2022, H049559)

16

### 3. *General Allegations of Third Amended Complaint*

In her third amended complaint, Kravchuk alleged, among other things, the following facts, which are admitted for purposes of demurrer to be true. (*Committee on Children's Television*, *supra*, 35 Cal.3d 197, 213-214.)

On March 9, 2017, Kravchuk and Taylor entered into a contract (i.e., the Agreement) to purchase the Property for $669,745. Under the terms of the Agreement, the date of closing was when the certificate of occupancy (hereafter, COO) issued for the Property.[8] After repeated attempts by Taylor to obtain a COO were rejected by the City of San Jose (City), a COO was issued on January 31, 2018. Taylor, its employees, and its attorneys claimed on multiple occasions in November and December 2017 that the City had issued a COO, thereby requiring that Kravchuk close escrow. Taylor scheduled six walk-throughs "and six (6) dates for close of escrow prior to the issuance of the [COO]." Kravchuk alleged that Taylor wrongfully terminated the contract on November 28, 2017, stating that the termination was the result of Kravchuk's failure to close escrow by November 22. Also on November 28, Lee and Taylor notified Kravchuk that she had not complied with the request to close escrow, and they falsely claimed that the City had issued the COO for the Property. Kravchuk was ready and willing to close escrow, but Taylor sold the Property to a third party on January 25, 2018, for $832,842, or $163,097 more than the price in the Agreement.

---

[nonpub. opn.].) We take judicial notice of these two previously filed opinions. (See *ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3 [appellate court may take judicial notice of its prior unpublished decision].)

[8] This allegation in the third amended complaint is incorrect for the following reason: The Agreement—a copy of which was attached to Kravchuk's third amended complaint—provides that the closing date or close of escrow was defined as "following substantial completion of the Home on a date to be specified in a notice to be provided by Seller to Buyer. Substantial completion of the Home shall be deemed to have occurred when a certificate of occupancy (*or its equivalent*) has been issued." (Italics added.)

As it pertained to respondents, the general allegations of the third amended complaint included the statement that respondents "owe[d] separate duties to Plaintiff not to defraud a party in transaction, and a duty of reasonable care. [Respondents] breached their duty when [they] failed to comply with strict provisions of the [Agreement] which required [Taylor] to provide [a] COO as a condition to close of escrow. In addition, [respondents] breached their duty to Plaintiff when[,] after being notified about the dispute with respect to the [Agreement] terms of the transaction at issue[,] [respondents] allowed [Taylor] to open and to close the escrow with respect to the Property with another buyer while no evidence was provided to [respondents] that the dispute with Plaintiff was resolved. [Respondents] could not have engaged in the service of other parties for the subject Property until the dispute between Plaintiff and [Taylor] would have been completely resolved."

### 4. Demurrer to Fraud Claim

#### a. Allegations Concerning Fraud

The third cause of action for fraud contained allegations that Taylor and its co-conspirators intentionally failed to disclose that (1) Taylor sold properties that could not be lawfully occupied; (2) the use and occupancy of Taylor properties could subject buyers to civil penalties and criminal charges; and (3) there had been thousands of buyers of Taylor properties who had been subjected to civil and criminal penalties. Kravchuk alleged further that before she signed the Agreement, Taylor and its co-conspirators intentionally misrepresented to her that the Property "would be permitted to be lawfully used and occupied." She alleged that on and after November 9, 2017, Taylor and its co-conspirators intentionally misrepresented that a COO for the Property had been issued. And Kravchuk alleged that Taylor and its co-conspirators intentionally concealed from her that the Property had been sold to another buyer. The only specific mention of respondents in the fraud cause of action was that "[respondents] should not have assisted [Taylor] and other co-conspirators in [the] close of escrow [to] another buyer."

18

### b.     Order:  Demurrer to Fraud Claim

Kravchuk, to successfully plead fraud, was required to allege five elements: " ' (a)misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).)  "[F]raud must be [pleaded] specifically; general and conclusory allegations do not suffice. [Citations.]" (*Id.* at p. 645.)  And where the claim of fraud is based upon concealment, an essential element is that " 'the defendant must have been under a duty to disclose the fact to the plaintiff.' " (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 665 (*Roddenberry*).)

The trial court in its order noted that Kravchuk had pleaded that respondents owed her "two 'separate duties' not to defraud a party in a transaction and of reasonable care, and breached these duties when they (1) 'failed to comply with strict provisions of the Agreement which required [Taylor] to provide a certificate of occupancy as a condition to close of escrow' and (2) 'allowed [Taylor] to open and to close escrow with respect to the Property with another buyer' before the dispute between [Taylor] and Plaintiff was resolved."  The court concluded that Kravchuk had failed to allege facts sufficient to support *any* of the claims asserted against respondents in the third amended complaint, including the claim for fraud, because of the limited duties respondents owed as escrow holders in the transaction.

In support of this conclusion, the trial court relied on *Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705 (*Summit Financial*).  There, the California Supreme Court described the duties of an escrow holder as follows:  "In delimiting the scope of an escrow holder's fiduciary duties, . . . we start from the principle that '[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]' [Citation.] On the other hand, an escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to

19

faithful compliance with [the depositors'] instructions.' [Citations.] Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions. [Citations.]" (*Id.* at p. 711.) Thus, "no liability attaches to the escrow holder for his [or her] failure to do something not required by the terms of the escrow or for a loss incurred while obediently following his [or her] escrow instructions. [Citations.]" (*Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 163 (*Lee*).)

The trial court here indicated that the parties to the Agreement under paragraph 7 thereof "authorize[d] and direct[ed] the Escrow Holder to receive, hold, deliver and disburse, pursuant to the terms of this Purchase Agreement, all documents and monies to be deposited with Escrow Holder." The Agreement, the trial court held, contained no provision that required respondents "to ensure that a condition of the Agreement had been satisfied or [to] monitor Plaintiff's and [Taylor's] compliance with its terms. Plaintiff does not allege that [respondents] failed to comply with the escrow instructions by improperly receiving, holding, delivering or disbursing documents or monies; rather, her sole allegation is that [respondents] failed to comply with *TM's* [*Taylor's*] obligation to provide a certificate of occupancy as a condition to close escrow." (Original italics.)

The trial court also found no merit to Kravchuk's allegation in the third amended complaint that respondents breached a duty to her by permitting Taylor to open and close escrow selling the Property to another buyer. Reasoning that Kravchuk was not a party to that subsequent escrow, and an escrow holder owes no duties to a third party. i.e., a stranger to the escrow (see *Summit Financial*, *supra*, 27 Cal.4th at pp. 712-713), the trial court concluded that respondents owed no duty to Kravchuk to prevent the subsequent purchase of the Property.

In addition to its conclusion that Kravchuk failed to state a claim for fraud against respondents because of the absence of duty, the trial court held that the fraud claim based upon misrepresentation was defective because it was "devoid of *specific* facts . . . and [was predicated] on allegations that consist[ed] of general and conclusory statements

20

improperly grouped together." (Original italics.) (See *Lazar*, *supra*, 12 Cal.4th at p. 645 [requirement of specific pleading of fraud " 'necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered" ' "].) The court concluded further that Kravchuk could not allege justifiable reliance or damage in support of her fraud claim "because she concede[d] that she did not fund or close escrow for the purchase of the property, her deposit was returned, and therefore she suffered no recoverable damages."

### c. Demurrer to Fraud Claim: Discussion

In her opposition filed below, Kravchuk did not challenge the merits of respondents' demurrer. She instead argued that she should be granted leave to amend. Kravchuk contended that there were six escrow closing dates that were scheduled in the transaction, and that respondents were responsible for allowing such scheduling through their "violations of explicit written escrow instructions set forth in the [Agreement]." Kravchuk cited a provision of the Agreement reading as follows: "This Purchase Agreement shall serve as the written escrow instructions to govern the consummation of the purchase and sale of the Property." Kravchuk thus argued, in essence, that respondents had a duty to ensure that the parties to that Agreement—*a contract of which respondents were not contracting parties*—complied with all terms of the Agreement, including terms regarding the scheduling of escrow closing.

As noted above, the trial court relied on *Summit Financial*, *supra*, 27 Cal.4th at page 711, where the California Supreme Court held that an escrow holder's agency is "limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow," and the " 'escrow holder ha[d] no general duty to police the affairs of its depositors' " (*ibid.*). The trial court held that these principles controlled, and that respondents, as escrow holders, were "required . . . to receive, hold, deliver and disburse documents and monies pursuant to the terms of the Agreement," and they were *not required* "to ensure that a condition of the Agreement had been satisfied or monitor

21

Plaintiff's and [Taylor's] compliance with its terms." And it concluded further that Kravchuk incorrectly asserted that the Agreement itself was an escrow instruction; instead, the court found that "[respondents] were *not* parties to [the Agreement] and had no obligations under it other than to facilitate the transaction pursuant to the parties' instructions therein." The trial court, therefore, implicitly rejected the contentions raised by Kravchuk in her opposition that she should be granted leave to amend to allege a viable claim for fraud against respondents.

Kravchuk argues on appeal that leave to amend should have been granted because she could allege a viable "[d]eceit-concealment cause of action." Kravchuk asserts that she could allege concealment based upon respondents' breach of duty to disclose to her that when Taylor "kept scheduling close of escrow dates . . . , [a] COO . . . for the Property [was] not among the documents provided by [Taylor] for close of escrow." Kravchuk argues that her new allegations would include that respondents "intentionally concealed/suppressed the fact [that no COO had been provided by Taylor, and she] was damaged as a result" in that she relied on the fact that a COO issued to travel with her family from Ukraine to attend a walk-through and escrow close.

Kravchuk's position ignores the fact that to plead concealment, she was required to allege that " 'the defendant[was] under a duty to disclose the fact to the plaintiff.' " (*Roddenberry*, *supra*, 44 Cal.App.4th at p. 665.) The escrow instructions, as provided in the Agreement, did not impose any obligation upon respondents to confirm that the parties had fulfilled all obligations of the Agreement. Specifically, here, it was not among respondents' duties to verify whether Taylor had appropriately scheduled escrow dates, or whether Taylor had correctly determined that there had been "substantial completion" of the Property through—as provided in the Agreement—the issuance of "a certificate of occupancy (or its equivalent)."[9] "[N]o liability attaches to the escrow

---

[9] As we have noted (see fn. 8, *ante*), the allegations in Kravchuk's third amended complaint that concerning the terms of the Agreement were contradicted by the

holder for his [or her] failure to do something not required by the terms of the escrow." (*Lee*, *supra*, 264 Cal.App.2d at p. 163; see also *Hannon v. Western Title Ins. Co.* (1989) 211 Cal.App.3d 1122, 1128 ["escrow holder has no general duty to police the affairs of its depositors"].)

Moreover, Kravchuk's argument on appeal that she could readily plead a viable claim against respondents for fraudulent concealment is devoid of any specific facts as to what she proposes could be alleged. "Fraud, including concealment, must be pleaded with specificity. [Citation.]" (*Dhital v. Nissan North America, Inc.* (2022) 84 Cal.App.5th 828, 843-844 (*Dhital*); see also *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 347 ["conclusionary allegations that the omissions were intentional and for the purpose of defrauding and deceiving plaintiffs . . . are insufficient [to show fraud by concealment]"].)

Kravchuk also argues on appeal that the trial court erred in making a finding in its order that the equivalent of a certificate of occupancy had actually been issued. She asserts that this was an improper factual finding on demurrer, and that finding contradicted the allegations of the third amended complaint. The statement was made in the paragraph of the order in which the court concluded that respondents, as escrow holders, did not have a duty to determine whether conditions of the Agreement had been satisfied or to monitor Taylor's and Kravchuk's compliance with its terms. The court

_____

Agreement, attached to the pleading, itself. Contrary to what was alleged that close of escrow was to occur upon issuance of a certificate of occupancy, the Agreement provided that the event that triggered close of escrow was the issuance of a certificate of occupancy *or its equivalent*. (See *Barnett v. Fireman 's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505 [facts appearing in exhibits attached to the complaint (part of the "face of the pleading") are given precedence over inconsistent allegations in the complaint]; see also *Performance Plastering v. Richmond American Homes of California, Inc.* (2007) 153 Cal.App.4th 659, 666-667 [where insurer alleged in complaint that it was party to the settlement agreement, and that agreement, which was properly subject to judicial notice by the court in considering the demurrer, contradicted the insurer's allegation, the terms of the agreement controlled].)

emphasized that "the obligation to obtain either a certificate of occupancy or its equivalent was *solely* [Taylor's]." (Original italics.) In the context of the court's order, the court's conclusion that respondents owed no duty to determine whether Taylor had obtained a certificate of occupancy or its equivalent was not dependent on its further statement that "the equivalent [of a COO] *had* been issued by the County." (Original italics.) In any event, any claimed erroneous finding is of no relevance to our conclusion that the court did not err in sustaining respondents' demurrer without leave to amend. "[W]e do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]" (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)[10]

Kravchuk has failed to meet her burden of showing a reasonable possibility that she could cure the defects in the third amended complaint to state a viable claim for fraud. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

### 5. *Demurrer to Conspiracy Claim*

Kravchuk alleged in the fourth cause of action for civil conspiracy that all defendants were aware of Taylor's intended actions directed toward deceiving her into signing the Agreement. She alleged further that, beginning on November 8, 2017, Taylor and its co-conspirators joined together to make false representations that the Property was

---

[10] Kravchuk on appeal also argues at length that the trial court erred by sustaining respondents' demurrer for uncertainty without leave to amend as to allegations against the entity, First American Financial Corporation (respondent First American). The court agreed with respondents' position that the third amended complaint was uncertain insofar as it named First American as the responsible defendant, notwithstanding that the exhibits to the third amended complaint disclosed that the actual entity that provided escrow services in the transaction was First American Title Company. Kravchuk's opposition to the demurrer contained no argument on this issue. "[A]rguments raised for the first time on appeal are generally deemed forfeited. [Citation.]" (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592; see also *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192 [appellate argument not raised below at hearing on demurrer deemed forfeited].) Kravchuk's argument here is forfeited.

24

habitable and that a COO had issued; they thereafter concealed from Kravchuk that the Property was sold to another buyer; and the co-conspirators, including respondents, wrongfully assisted Taylor in concluding that sale.

The trial court concluded that Kravchuk had failed to state a cause of action for conspiracy. It acknowledged the Supreme Court's holding that "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.]" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.) "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. ' "A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage." ' [Citations.]" (*Id.* at p. 511.) Here, the trial court reasoned that, because it had concluded that Kravchuk had failed to state a cause of action for fraud, it necessarily followed that her claim for civil conspiracy also failed.

As noted, Kravchuk does not contend that the trial court erred in sustaining the demurrer to this (or any other) cause of action. She argues, however, that she would be able to amend to state a viable cause of action for conspiracy. Kravchuk bases this position on the same appellate argument she raises in support of her claimed ability to amend the fraud claim. She asserts that she would be able to cure the defect with the proposed amendment alleging that "[respondents] agreed [i.e., conspired] with other Defendants to suppress (conceal) [the] material fact that" Taylor had not provided a COO to the escrow holder.

For the reasons discussed above, this proposed amendment would not cure the defect with respect to Kravchuk's fraud claim, because respondents had no duty to verify whether Taylor had appropriately scheduled escrow dates, or whether Taylor had correctly determined that there had been "substantial completion" of the Property through

the issuance of "a certificate of occupancy (or its equivalent)." (See *Lee*, *supra*, 264 Cal.App.2d at p. 163.) And her proposed amendment to allege fraud based upon concealment lacks any specificity required for such a claim. (*Dhital*, *supra*, 84 Cal.App.5th at pp. 843-844.) Because the civil conspiracy claim requires an underlying tort claim, and that underlying tort (fraud) is not viable, Kravchuk's conspiracy claim, even with the proposed amendment, is not viable.

Moreover, there is no liability for civil conspiracy if the individual "was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44.) Since respondents owed no duty to determine whether Taylor had obtained a COO or its equivalent, and as escrow agents, had no duty to prevent Taylor from selling the Property to a third party after the Agreement with Kravchuk was cancelled, they could not be held liable for civil conspiracy. (See *ibid.*)

### 6. Conclusion Re Demurrer Order

Kravchuk does not challenge the court's conclusion that the third amended complaint failed to state facts sufficient to constitute a cause of action. Rather, her assertion on appeal is that the court abused its discretion in sustaining the demurrer to the fraud and conspiracy claims without leave to amend. The proposed amendments stated in Kravchuk's opening brief, however, do not cure the defects to those causes of action. As to the third cause of action for fraud, and the fourth cause of action for civil conspiracy— which is dependent on the viability of the fraud claim—Kravchuk has not shown that she can plead with any specificity (1) fraud (either based upon affirmative misrepresentations or concealment of known material facts) perpetrated by respondents; or (2) actionable wrongdoing for fraud or concealment founded upon the existence of any duty owed to Kravchuk by respondents, as escrow agents.

We acknowledge that "[i]t is often said that leave to amend a complaint should be liberally granted, particularly with respect to a party's initial complaint." (*City of*

26

*Torrance v. Southern California Edison Company* (2021) 61 Cal.App.5th 1071, 1091.) This liberal policy notwithstanding, Kravchuk bears the burden of showing that she could amend the third amended complaint to cure the numerous defects identified by the trial court rendering the pleading demurrable. (See *Campbell*, *supra*, 35 Cal.4th at p. 320.) Kravchuk has failed to meet her burden of demonstrating a reasonable possibility that the complaint can be amended to state a viable claim "by identifying new facts or theories on appeal. [Citations.]" (*Minnick*, *supra*, 13 Cal.App.5th at p. 1004.) Accordingly, we find that the trial court did not abuse its discretion in denying leave to amend as to the third and fourth causes of action. (*Schifando*, *supra*, 31 Cal.4th at p. 1081.)

## C.      Order Denying Motion to Strike or Tax Costs

After respondents filed a memorandum of costs after entry of judgment, Kravchuk filed a motion to strike or tax costs. She argued that it was provided in the Agreement that "[i]n the event any dispute arises under the terms of this Purchase Agreement . . . then all fees and costs shall be borne separately between the parties." Kravchuk relied on a prior court order in the case involving other defendants (Ganion and CSCG) in which the court had apparently denied the defendants' request for costs because they were "parties 'entitled to the benefit of the Purchase Agreement.' " (Emphasis omitted.) She argued that under the same reasoning, respondents here could not recover their costs. Kravchuk asserted further that the costs should be taxed because they were excessive.

In its order filed May 11, 2022, the court denied the motion to strike or tax costs. The court concluded that there was no evidence that respondents "acted as agents of Taylor Morrison, were parties to the purchase agreement or benefitted from its terms." It therefore held that respondents were not barred from seeking their recoverable costs and denied Kravchuk's motion to strike. The court further denied Kravchuk's motion to tax costs, concluding that she had not met her burden of proving the merits of her motion.

Kravchuk challenges the order. Her appellate brief discusses the issue in a cursory fashion. (See *Stuard v. Stuard* (2016) 244 Cal.App.4th 768, 780 [an appellant's undeveloped arguments are deemed forfeited on appeal].)

Her claim of error is without merit. Neither First American nor Trelles was a party to the subject Agreement. The parties, as identified in the Agreement, were Kravchuk, as buyer, and Taylor, as seller. They were the signatories. Neither respondent signed the Agreement. Trelles was not mentioned in the Agreement. The only mention of a First American entity was the identification of First American Title Company as the escrow holder.

Kravchuk presents no authority for the proposition that simply by virtue of an entity having been named as escrow holder in an agreement to which it was not a party or signatory—and to which it was not a third-party beneficiary—that entity is bound by the terms of that contract. (See *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 294 [ "[i]t goes without saying that a contract cannot bind a nonparty"]; see also *BRE DDR BR Whittwood CA LLC v. Farmers & Merchants Bank of Long Beach* (2017) 14 Cal.App.5th 992, 1003 [provisions of lease "cannot form a binding contract on a non-party to the lease"].)

There is no merit to Kravchuk's challenge to the order denying her motion to strike or tax costs.

## III.     DISPOSITION

The judgment of dismissal in favor of respondents First American Financial Corporation and Olivia Trelles entered on January 14, 2022, is affirmed. The May 11, 2022 postjudgment order denying appellant Mariia Kravchuk's motion to strike or tax costs is affirmed. Respondents shall recover their costs on appeal.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
DANNER, J.

_____
WILSON, J.

*Kravchuk v. Trelles*
**H049882**

29